23 539,
77 592

23 539
84 385

23 539
92 608
92 610

## MARY A. GREEN ET AL. v. ALPHONZO RUGELY ET AL.

An heir can only be held liable for the debt of his ancestor, to the extent of the value of the property he has received.

Suit cannot be maintained against a party, in this state, as executor in his own wrong.

Where suit is brought against a widow, charging that she has taken into her possession, the property mortgaged to secure the debt sued for, and it is found by the verdict, that the property is of less value than the debt; a judgment against her for the debt, to be discharged, however, upon the delivery of the property, within a time fixed by the court, is erroneous.

As a general rule, there must be an executor or administrator representing an estate, to enable a creditor to bring a suit to subject the property of a deceased debtor to the payment of his debt.

The necessity for such executor or administrator, must be presumed in every case, unless facts be shown, that make it an exception to the general rule.

The fact, that property, upon which the creditor has a lien, is in the possession of the widow, who has removed to this state, from that in which her husband died, since his death, and that there is no administration on the estate of the debtor, either here or elsewhere, does not present an exception to this general rule.

The laws of another state, when not shown, must be presumed to be similar to our own.

That a party died, or had property in a particular diocese, as a general rule, is the test of jurisdiction of the Ecclesiastical Courts in England, to grant administration; but it will be granted, when necessary, upon unadministered effects found there.

The theoretical difficulty of jurisdiction, in England, arises not from a consideration of the objects of an administration, but from an effort to limit it, by keeping in mind the ground upon which it was originally founded.

The difficulty in the several American States, in granting administration upon property of one dying abroad and brought within their jurisdiction, arises from the limited scope of authority given by their statutes.

The terms of our statute are sufficiently broad to admit an administration to be granted in respect to any unadministered property, whether it was here at the time of the death of the party, or was brought here afterwards.

In order to give the court powers commensurate with the general objects of the system, the grant was made thus general, in the Act of 1848, "to regulate proceedings in the County Court;" and the provisions of the Act of 1836, which might be construed into a limitation on the power, was not inserted in it.

The change in the different clauses of the first section of the Act of 1848, seems intended to convey the same idea. And a liberal construction of the last clause of it, would confer jurisdiction to administer, upon the county where the property should be found; but it is unnecessary to decide as to this, since it may well be said, that it was not intended, by this section, either to confer or limit the powers, but merely to prevent a conflict as to jurisdiction.

The power to administer, should not depend upon the mere contingencies upon which a preference between counties is regulated.

Nor do ancillary administrations depend, for their authority, entirely upon express statutory regulations.

It is not necessary, in all cases, to the grant of an ancillary administration, that there should be an administration in the foreign state.

The rights of parties (as to personal property,) are controlled by the law of the country where the decedent resided at the time of his death.

Effect will be given to these laws, by the court, in the administration granted here, whether there be an administration in the foreign state, or not.

ERROR from Anderson.    Tried below before the Hon. Charles A. Frazer.

This was a suit by Rugely, Blair & Co., the defendants in error, against Mary A. Green, the widow, and Samuel H., Ella V., George W., and Mary L. Green, the minor children of Robert W. Green, deceased.

It was alleged by the plaintiffs, in their petition, that Robert W. Green, in the county of Anderson, where he then resided, exe-

cuted to them, on the 14th of April, 1854, his note for $4613.14, payable on the 1st day of April, 1855; and, to secure the payment thereof when due, the said Green, on the same day, executed to F. L. Barzeza, a deed of trust, upon the negroes therein described, which was duly recorded in the said county of Anderson. It was further alleged, that Green had, without their knowledge or consent, or that of Barzeza, removed the said negroes, with himself and family, to the State of Louisiana, and domiciliated himself in the parish of Morehouse, in the said state, where he subsequently, on the —— day of ———, 1855, died intestate. That afterwards, the defendant, Mary A. Green, took the said negroes into her possession, and brought them back to Anderson county, where she then had them in possession, and was holding them as her own property; that there had been no administration upon the estate of the said Robert W. Green, deceased, in Louisiana, or elsewhere; and that the said minors were without guardians. The petitioners prayed that the negroes might be sold to pay their said debt; that the said Mary A. Green should pay the value of the services of the negroes since they had been in her possession, in payment of their debt; and for general relief.

The court appointed a guardian *ad litem* for the said minors, who, together with the defendant, Mary A. Green, excepted to the petition, among other causes:—1st. That said Barzeza was not made a party. 2d. Suit should have been brought against the legal representative, and not against the heirs of the said Robert W. Green. 3d. The claim upon which suit was brought, should have been presented to the legal representative of the said Green, for allowance. 4th. Application for the sale of the property, should have been made to the Probate Court. They also filed answers to the merits.

The court sustained the exception, that Barzeza should have been made a party, and overruled the others. Barzeza then appeared and made himself a party plaintiff; and they abandoned their claim for the services of the negroes while in the possession of the defendant, Mary A. Green.

There was, at the Fall Term, 1858, a trial upon the merits; the jury found, upon issues submitted to them, that there was due the plaintiffs, on the said note, $5283.76; and that the negroes in the possession of the defendant, Mary A. Green, were worth $3600. Whereupon, the court gave judgment against her for the said sum of $5283.76, and costs of suit; but that the same should be discharged by the delivery to the sheriff of the negroes in controversy, on or before the 1st of January, 1859.

*E. H. Horrell* and *James M. Perry*, for the plaintiffs in error.

*John E. Cravens*, for the defendants in error.

ROBERTS, J.—The judgment, as it was rendered, is erroneous, because Mrs. Green was not primarily bound for the debt. If she could be held liable for the debt, as heir or distributee, it could only be to the extent of the value of the property she had received; and the negroes in her possession were shown to be of much less value than the debt, for which a judgment was rendered against her. She could not be held liable, in this state, as an executrix *in her own wrong.* (Ansly v. Baker, 14 Texas Rep. 607.) The judgment must, therefore, be reversed. But the important inquiry, presented by the exceptions to the petition is, can the plaintiffs below maintain this suit at all, upon the facts alleged by them?

Generally, there must be an executor or administrator representing an estate, to enable a creditor of a deceased debtor, to bring suit, and subject the property of the estate to the payment of the debt. (Ansley v. Baker, 14 Texas Rep. 607.) Upon this subject, the chancellor, Lord COTTENHAM, said, "That an estate cannot be administered in the absence of a personal representative, and that such personal representative must obtain his right to represent the estate from the Ecclesiastical Court in this country, has, I believe, never been doubted." (Tyler v. Bell, 14 Eng. Ch. Rep. 109.) Our statute, casting the descent of the estate, both real and personal, directly and immediately

upon the heirs and distributees, subject to an administration, does not vary this, as an ordinary rule, otherwise than by creating exceptions, when the reason of the rule does not exist. A right of action is given to creditors, against heirs and distributees, to the extent of the property which may come to their hands, and be held by them, in the absence of an administration. (Hart. Dig., Art. 1221.) But the law recognises certain rights allowed to the widow and children of a decedent, to be of higher grade than the claims of creditors, and also gives a preference to some debts over others; and where there is a deficiency of assets to pay all, it makes provision for a rateable division among the creditors generally; and especial care is taken to prevent sacrifices, in sales of property, to pay debts. (Hart. Dig., Art. 1153, 1154, 1176, 1177, 1181, 1187, 1189; McMiller v. Butler, 20 Texas Rep. 402; Cunningham v. Taylor, Id. 129.)

These, as well as other general objects of the law, pertaining to the estates of deceased persons, to be practically attained, require the adherence to it, as the ordinary rule, that creditors must pursue their remedies through the jurisdiction of the County Court. (See same authorities, 14 Texas Rep. 607; 20 Id. 129, 402.) The necessity to pursue this remedy, must be presumed to exist in every case, until facts are shown which make it an exception. The statute makes certain exceptions, by rendering heirs, distributees, persons in possession of the property, and those giving certain bonds, liable to be sued by creditors; as when, after administration, the estate is ordered to be distributed, and a debt, not barred, has not been paid. (Hart. Dig., Art. 1197.) The case of Montgomery v. Nash, decided this Term, at Galveston, (supra, 157,) comes under the equity of this provision. In that case, the debt had been acknowledged and approved, the estate had been administered and closed, without distribution, but the property had gone into the possession of the guardian of the heirs. Another exception is, where a will takes from the County Court the administration of the estate, and a bond has been given and filed, in the County Court, to secure the debts. (Hart. Dig., Art. 1219; Carroll v. Carroll,

20 Texas Rep. 746.)   The other exceptions need not, in this case, be commented on.   (Hart. Dig., Art. 1211–1220.)

It follows, from these propositions, that whenever a creditor seeks to subject the property of an estate to the payment of his debt, by bringing a suit in the courts of this state against an heir, or distributee, or some one in possession; or against any one who is not an administrator or executor of such estate; his petition must state such facts, as bring him within some of the exceptions to the ordinary rule of proceeding.   It is not pretended, that the plaintiffs below have brought themselves within any of the exceptions specially expressed in the statute.

If this case be an exception to the ordinary rule, that a creditor must collect his debt through the proceedings of the County Court, it is because the decedent, Green, died while residing in the State of Louisiana, and had his property, which is now the subject of litigation, with him in that state; and that it was brought into this state, after his death, by the widow, Mrs. Green.   The petition states, that there has been no administration taken upon his estate in Louisiana, or elsewhere.

The difference between this case and that of Ansly·v. Baker, decided by this court, is, that in that, the property sought to be held subject in the hands of the heir, was in this state at the time of the death of the person from whom he inherited it; and in this, the property was not in this state at the time of Green's death, but was brought here afterwards.   Now, does the fact, that the property was not within this state at the time of Green's death, constitute an exception to the general rule laid down and enforced, in that case,—that a creditor, who is forced to apply for a legal remedy, must collect his debt through the instrumentality of an administration in the County Court, and cannot sue the heir in possession in the District Court ?   We think not.   The laws of Louisiana, as they affect the rights of parties having an interest in this property, not being stated in the petition, must be presumed, as to this litigation, to be similar to our own.   The widow and minor heirs of Green, together with this property, unadministered, being here

shortly after his death, and the estate being indebted, as shown by the existence of this debt; and that being secured, as it is claimed, by a lien upon this property; and the debt being greater in amount than the alleged value of the property; show that the considerations, which require the adoption and enforcement of the ordinary rule, in the ascertainment and adjustment of the respective rights of the parties, apply with equal force in this case, as it is now presented, as though the property had been here at the time of Green's death, and even as though he had resided here at the time of his death. There is nothing in the fact, that the property was not then in this state, calculated to induce a change in the general policy of the law on this subject.

It is contended, that this case forms an exception, because the property not being in this state at the time of Green's death, the County Court had no power to grant letters of administration in reference to it. This is the controlling question in this case. The test of jurisdiction in the Ecclesiastical Courts in England, was the fact, that a person died, and had property in a particular diocese at the time of his death. (1 Williams on Executors, 248, 249.) Mr. Williams, in speaking of foreigners, says: "If the testator died, without leaving any personal property in this country, generally speaking, his will need not be proved in any Court of Probate here." (Id. 301.) This, he says, is the case, "*generally speaking.*" If the person die domiciliated in a foreign country, having effects in England at the time of the death, then the jurisdiction of the Court of Probate attaches, and ancillary administration of the effects is granted. This is settled by uniform course of decision, both in England and America. (Story's Confl. § 513; Stevens, Administrator, v. Gaylord, 11 Mass. 260; 1 Williams on Executors, 302.)

Cases have been decided in the English courts, which favor the idea, that their Court of Probate may grant administration upon the effects of a deceased person, found within their jurisdiction, although the party did not die there, and the property

was not there at the time of the death. In giving the substance of these decisions, Mr. Williams says, (vol. 1, p. 302,) "Therefore, if a testator die in India, and his personal estate be wholly there, and his executor be resident there, and the will be proved there, yet, if a part of the assets remain in the hands of the executor unappropriated, and come to be administered in England, and a legatee in England institute a suit here, for the payment of his legacy out of such unappropriated assets, administration to the testator ought to be taken out in this country, and the administrator made a party to the suit. (Logan v. Fairlie, 2 Sim. & Stu. 284.) So, to a bill, which seeks an account of the assets of an intestate, who died in India, possessed by a personal representative there, a personal representative of the intestate, *constituted in England*, is a necessary party, though it does not appear that the intestate, *at the time of his death*, had any assets in England." (Tyler v. Bell, 2 Mylne & Cr. 89.)

These are two cases, whose facts show, that administration was taken out in England upon unappropriated effects, remitted there from India, although the party died in India, and his will was proved in that country. (Attorney-General v. Cockerell, 1 Price, 165; Same v. Beatson, 7 Id. 560.) These cases are quoted and relied on, by the Chancellor, in the case of Tyler v. Bell, above cited; (14 Eng. Ch. Rep. 109;) and are fully explained in the argument of the attorney-general, (Sir J. Campbell,) in the case of Attorney-General v. Hope, 1 Crompton, Meeson & Roscoe, 538. In this argument it is also shown, that an application for probate of a will, under similar facts, was rejected, *only on the mistaken ground, that a personal representative was unnecessary*; and it was then said, upon its refusal by the Ecclesiastical Court, that "if the Court of Chancery had absolutely decided that the prerogative probate was necessary, this court, in aid of justice, might allow the grant to pass." (1 Hagg. Eccl. Rep. N. S. 636.)

The theoretical difficulty of jurisdiction in England has arisen, not from a consideration of the objects, and necessity of an administration, as now applied to property; but, by an effort to

limit the jurisdiction, by keeping in mind the original ground upon which it was founded; which was the right of the bishop, or archbishop, over the effects found in his jurisdiction at the death of the party. (1 Crompton, Meeson & Roscoe, 533.) The practice is, as it is presumed from the authorities, to grant administration upon unadministered effects found there, when it is necessary. And without administration, by which a personal representative can be served with process and brought into court, no decree will be made, even by a court of equity, in respect to it.

In the several American states, the difficulty in granting administration upon such property, arises from the limited scope of authority given by their statutes to their Courts of Probate. Many, if not most, of their statutes, limit their authority to cases, where the party dies within the state, or has his domicil there at the time of his death, or has effects there at the time of his death. (14 Johns. Rep. 428; 1 Bradford, Rep. 125; 9 Humphries, 327; 3 Mass. Rep. 514; 2 Id. 393.)

In Kentucky, it has been held, that administration could not be obtained upon property thus brought into that state, after the death of the owner. That, however, was based upon the impression, that at common law, the foreign administrator could sue, and that therefore an administration in that state was unnecessary. (Embry v. Millar, 1 A. K. Marsh. 300.) It has been rendered unnecessary there, by statute. (6 J. J. Marsh. 146, 147.)

In the case of Stevens, Administrator, v. Gaylord, 11 Mass. Rep. 262, it is said: "If a foreigner, or a citizen of any other of the United States, dies, leaving debts and effects in this state, these can never be collected by an administrator appointed in the place of his domicil, and we uniformly grant administration to some person, here, for that purpose. This is the rule of the common law; and it is adopted, as we understand, in most of the United States." This power to grant ancillary administration, is not limited within the scope of express statutory regulation.

In the same case, it is held, that it is not absolutely necessary to the validity of the ancillary administration, that there should even be an administration in the foreign state. If this ancillary administration can only be taken out, as to effects in this state, at the time of the death of the party, although they be found here, unadministered afterwards, most important rights may be lost without a remedy. A foreign administrator cannot sue for property found here, which he had not reduced to possession; nor can he collect debts in this state, due his intestate, from persons who may come here after the death of the party. Our statute, in granting probate powers to the County Court, is general. It provides, "that the said court shall have the power to take probate of wills, to appoint guardians, grant letters testamentary, and of administration," &c., "which powers shall be exercised in the manner prescribed by law." (Hart. Dig., Art. 308.)

This is sufficiently broad, to admit an administration to be granted in all cases, where the general objects of our system of probate laws may require it, and to enable the court to grant administration, when necessary, in respect to any unadministered property that may be found in the state, whether it was here at the time of the death of the party, or was brought here afterwards. During the session of the legislature, in 1848, there was a thorough revision, amendment, and consolidation of our former probate system, both as to the organization and powers of the court, and the rules of procedure in the administration of estates. (Hart. Dig., Art. 161, 355.) In order to give the court powers, commensurate with the general objects of the system, the grant was made thus general; and the provision in the Act of 1836, which might be construed into a limitation on the power, was not inserted in the Act of 1848. The former act, (to wit, of 1836,) gave the court power to "take probate of wills, grant letters of administration on the estates of persons deceased, who were inhabitants of, or resident in said county, at the time of their decease," &c., "and shall have full jurisdiction of all tes-

tamentary and other matters, appertaining to a probate court, within their respective counties." (Hart. Dig., Art. 252.)

It is important to be observed, that in the Act of 1848, there is nothing specified as the test of the court's jurisdiction, as the death of the party in the county, his having property in the county at the time of his death, and the like, as is the case in many of the states. The propriety of thus enlarging the powers of the court, was, doubtless, suggested by the previous experience of the country. And it could hardly have escaped attention, in considering this subject, that persons would die in immigrating to this country, and their estates be brought here unadministered; and that persons would be interested in collecting debts here, in cases where property would be brought here unadministered, after the death of the debtor.

The particular county, which is given a preference, in the exercise of the power of granting administration by the court, is pointed out by the first section of the Act of 1848, " to regulate proceedings in the County Court." (Hart. Dig., Art. 1110.) It provides, "that wills shall be admitted to probate, and letters testamentary, or of administration, shall be granted, in the county where the deceased resided, if he had a domicil or fixed place of residence in the state. If the deceased had no domicil, or fixed place of residence in the state, but died in the state, then, either in the county where his principal property was, at the time of his death, or in the county where he died. If he had no domicil, or fixed place of residence in the state, and died without the limits of the state, then in any county in this state, where his nearest kin may reside; but if he had no kindred in the state, then in the county where his principal estate may be situated." It will be seen, that in cases where "*the principal property*" is made the test, as to the county, the expression is capable of a much broader construction, when the deceased had no domicil in the state, and died out of it, than when he had no domicil in the state, and died in the state. In the latter case, that was the proper county, where his principal property *was at the time of his death,* (or when he died.)

In the former, that is the proper county where (his nearest kin *may* reside, or where) his principal estate *may be situated*. Why change the expression from "*was at the time of his death*," to "*may be situated*," if the same definite idea was sought to be conveyed. If the most liberal sense be placed upon this last part of the section, in may be construed to give the court of that county the right to administer, where the nearest kin may reside, or the principal estate may be situated, when administration is taken out, in a case like the one under consideration. If it will not bear this construction, which it is not now necessary to decide, then it may well be said, that it was not intended by this section of the statute, either to confer or limit the powers of the court, but merely to regulate the matter of preference to be given to a particular county, in order to prevent more than one administration in the state, and to give that county the preference, in which facts and circumstances existed, which render it probable that there the interest of the estate would be best attended to.

If it should happen, that those circumstances do not exactly exist in any county in the state, and unadministered property be found here, then there will be a case found, wherein no preference for a particular county has been declared. The Court of Probate is instituted to administer vacant estates; not to benefit counties or their officers by administering estates within them. The power to administer should not be made dependent upon the mere contingencies upon which a preference between counties is regulated, but upon the existence of property within the state, whose condition, in reference to the rights of parties in relation to it, calls for the application of our probate laws, for its preservation and distribution.

Under any other view, a personal representative could never have been appointed by the Ecclesiastial Court in England, for property remitted there from India, in a case where the testator had all his effects in India, at the time of his death, and died there. For, when the person died abroad, the locality of his property, at the time of his death, indicated the diocese, whose

Ecclesiastical Court had the right to grant probate. (See Griffith v. Griffith, cited in 1 Williams on Executors, 256.)

Under any other view, also, the ancillary administration, now so universally recognised, would be made to depend for its authority, entirely upon the specific regulations of each state; whereas, Mr. STORY in his Conflict of Laws, says, " The right of a foreign executor or administrator to take out such new administration, is usually admitted as matter of course, unless some special reason intervene to vary or control it; and the new administration is treated as merely ancillary or auxiliary to the original foreign administration, so far as regards the collection of the effects and the proper distribution of them." (Story, Confl. of Laws, § 513; Stevens, Administrator, v. Gaylord, 11 Mass. Rep. 256.) With reference to the proper county, in such case, it may be said, incidentally, that the court must act upon the nearest analogy as presented in the provisions of the statute, and the court first thus assuming jurisdiction, may retain it. (Goodwin v. Jones, 3 Mass. Rep. 522.) The petition, in this case, shows that the widow and heirs of Green, and the property, being still unadministered, were in Anderson county, in this state, shortly after his death in Louisiana. The property, then, and those supposed to be most deeply interested in it, are shown to be in a situation to be subject to the process and control of the Court of Probate, in that county, and if these facts do not bring the case within the letter of the statute, which requires letters of administration to be taken in that particular county, that does not defeat the right of the court, in that county, to act upon the property thus within its control, and subject to its process; the condition of the property being such as to call for its interposition.

We think, therefore, that that court had power to grant administration upon this property, and, so far as the facts are stated in the petition, such administration was necessary and proper; and that by that means, the plaintiffs below should have sought the collection of their debt, and not by a suit in the District Court.

Nor do we think the objection tenable, that the County Court is not fully competent to administer the estate. The rights of the parties in interest are fixed or controlled by the laws of Louisiana, where Green died, and resided at the time of his death. And with reference to the rights thus fixed, the parties would have a right to have it administered, upon interposing in the court for that purpose. The administration here would be ancillary in its character and results, whether a principal administration was taken out in Louisiana or not. This objection to the exercise of jurisdiction by the court, in this case, applies with equal force to every other ancillary administration.

It is not readily perceived, under the views here presented, in connexion with the case of Ansly v. Baker, how the plaintiffs below could amend their petition so as to maintain this suit in the District Court; but as the exceptions to the petition were overruled, and as it may not be proper to decide in advance, that no possible state of facts, which they might present upon amendment, would entitle them to relief, the cause will be remanded so as to give them an opportunity to amend, just as they could have done if their petition had been held insufficient upon the exceptions. Judgment reversed and cause remanded.

Reversed and remanded.