## W. F. NEAL ET AL. v. H. C. BARTLESON ET ALS.

(Case No. 2197)

1. GUARDIANSHIP—ESTATES OF NON-RESIDENT MINORS—JURISDICTION OF COUNTY COURT —LAND CERTIFICATE—RIGHT THERETO PROPERTY AND SUBJECT TO ADMINISTRATION THROUGH GUARDIAN—A CTOF MARCH 16, 1848, (PAS. DIG. 1226) CONSTRUED—In 1829, P. B. immigrated to Texas, and, in 1832, married, he and his family continuing to reside in Texas until 1843, when they moved to the state of Illinois. There were five children born of this marriage, three of whom died in early infancy.   The wife died in 1848, in Connecticut, whence she had gone with the children, and the husband died shortly afterwards, in the same year.   Their surviving children never returned to Texas, but, after the death of their parents, resided in Connecticut, with relatives.   P. B. and his wife, by virtue of their intermarriage, became entitled, under the then colonization laws of Texas, to a land certificate for a league and labor of land out of the public domain, but they died before this right was perfected.   In 1851, one John H. Brown, a resident of Texas, at the request of the children's relatives in Connecticut, applied to the county court of Calhoun county, Texas, for and obtained letters of guardianship of the estates in Texas of the children, then minors, resident in Connecticut; and in February, 1852, a certificate was issued by the state of Texas, under a special act of the legislature, for a league and labor of land in the name of P. B., their father.   In the fall of 1852, this certificate, being the only property, was sold at public sale by the guardian, in pursuance of an order of the county court, to raise means to defray the expenses of the guardianship and for the education and maintenance of the minors, H. becoming the purchaser thereof, for value.   The sale was subsequently confirmed by the county court, and the certificate duly transferred to H., who located it upon a league and labor of the public domain in Colorado county; and, in 1874, a patent for

the land, in the name of P. B., his heirs or assigns, was issued by the state to H. N. E. and G. afterwards entered into possession of the land, claiming, through mean conveyances, title thereto under H., the purchaser of the certificate at guardian's sale. In a suit by the surviving children of P. B. against N., E. and G. for the land. *Held:*

(1) That the right of P. B. and his wife to a league and labor of land out of the public domain, though but an inchoate right, was, nevertheless, property, which they might have sold in their life-time, and which having become, upon their death, vested in their minor children, was an asset belonging to the estates of the minors and subject to administration through a guardian.

(2) That this right had its existence only by force of the laws of Texas, and the tribunals provided by those laws, alone had the power to adjudicate the claim and furnish the complete evidence of the right.

(3) That the act of March 16, 1848 (Pas. Dig. 1226), conferring jurisdiction on county courts in matters affecting the estates of deceased persons and minors, placed no limitation on the power therein conferred, based on the non-residence of a deceased person or a minor ; and, in the absence of something in the statute indicating that it was not intended to confer jurisdiction upon those courts in matters affecting the estates of minors who were non-residents of the state, but having estates here, the courts are not authorized to place limitations upon their power, which the legislature did not in terms impose, or the subject-matter, under the rules of law recognized by the tribunals of all civilized nations, did not require.

(4) That it would be doing violence to the spirit of the law, to hold that the county courts had no power to appoint guardians and administer the estates of minors except in cases in which all the details were regulated by express statute. It must be presumed that it was intended that the general power conferred, should be exercised in accordance with the general rules applicable to such matters and enforced in the courts of England and the American union.

(5) That the minors, having rights here which required protection, and those rights having a value, and being property that could not exist or be enforced or secured any where else, some county court in this state had the power to appoint a guardian of their estates ; and, in the absence of a statute restricting the exercise of that power, by requiring it to be exercised in some particular county under existing facts, the county court of Calhoun county, or, as for that matter, the county court of any other county in the state, might lawfully exercise it.

(6) That the county court of Calhoun county having had jurisdiction and being a court of general jurisdiction, its decrees through which the land certificate was sold, cannot be called in question, except by some direct proceeding authorized by law for this purpose.

APPEAL from Colorado. Tried below before the Hon. Geo. Mc-Cormick.

This suit was brought by H. C. Bartleson, a resident of the state of Alabama, and Maria L. Cheesborough, a resident of the state of Ohio, against W. F. Neal, H. M. Everett, and W. H. Getzendaner, to recover a league and labor of land situated in Colorado county, and patented to the heirs of Peter K. Bartleson, deceased.

The defendants filed separate answers, claiming that the upper

half of the league and labor was owned by defendants W. F. Neal and Mrs. H. M. Everett, in undivided equal shares, and that the lower half was owned by defendant W. H. Getzendaner. They also pleaded general demurrer, general denial, not guilty, and the statute of limitations of two, four, and ten years, alleging that they, and those under whom they claimed, had openly and notoriously held and claimed the land certificate, by virtue of which the land was located and patented, for more than two, four, and ten years next before the same was located.

The plaintiffs were the only surviving children of Peter K. Bartleson.

The suit (trespass to try title) was filed December 6, 1884, in the district court of Colorado county, and was tried before the court without a jury, resulting in a judgment for the plantiffs for an undivided one-third of the land, and for the defendants for the remaining two-thirds.

Both parties appealed from this judgment, and assigned errors. The defendants' first assignment, the consideration of which by the supreme court has been decisive of the rights of the parties, is as follows: "The court erred in holding that the judgment of the probate court of Calhoun county, appointing Jno. Henry Brown, guardian of the minor heirs of Peter K. Bartleson, deceased, and all the acts of the guardian, and all the other orders of that court in the matters of the guardianship, were a nullity; and in holding that the probate court had no jurisdiction."

From this statement, and the one in the syllabus, the case will be understood.

*Harwood & Harwood* and *J. W. Ferris*, for appellants, W. F. Neal, H. M. Everett, and W. H. Getzendaner, that a probate court, being a court of general jurisdiction, its judgment, when it might by law take jurisdiction of the subject-matter or the person, can only be questioned in a collateral proceeding where the record shows, affirmatively, that its jurisdiction did not attach in the particular case, cited: Murchison *v.* White, 54 Tex. 81; Guilford *v.* Love, 49 Tex. 715; Brown *v.* Christie, 27 Tex. 75; Alexander *v.* Maverick, 18 Tex. 192; Vogelsang *v.* Dougherty, 46 Tex. 466; Brockenborough *v.* Melton, 55 Tex. 494; Johnson *v.* Beazley, 65 Mo. 250; s. c. 27 Am. Rep. 276, and authorities there cited; McNitt *v.* Turner, 16 Wallace 352; Grignon's Lessee *v.* Astor et als., 2 Howard 341; Voorhies *v.* The Bank of the United States, 10 Peters 449.

That the probate court of Calhoun county, in 1852, had jurisdiction

*in rem* over the subject-matter of the estate of the minor heirs of Peter K. Bartleson and Charlotte L. Bartleson, deceased, and, upon a proper showing, had authority to appoint a guardian of the minors to control the property, they cited: Const. of 1845, art. 4, sec. 15; Pas. Dig., 3909, 3916; Green *v.* Rugely, 23 Tex. 539; Berry *v.* Young, 15 Tex. 371; Story on Confl., secs. 499, 504, 504a; Leonard *v.* Putman, 12 Am. Rep. 106, and authorities there cited.

That the minor children of Peter K. Bartleson, at the death of their parents, became the owners, by inheritance, of all rights of property that had belonged to their parents; and their right to land, even before the certificate was issued, was an estate, and the probate court of Calhoun county, upon application of the minors, through a next friend, or their next of kin, had power to appoint a guardian of their estates, they cited: Giddings *v.* Steele, 28 Tex. 748; Johnson *v.* Newman, 43 Tex. 639; Hartley's Dig., art. 1535; Story's Confl., secs. 504, 504a; Green *v.* Rugely, 23 Tex. 539; Berry *v.* Young, 15 Tex. 371.

*Kennan & Townsend* and *Foard & Thompson,* for appellees, H. C. Bartleson and M. L. Cheesborough, that the probate court of Calhoun county in the matter of the guardianship of the minor heirs of Peter K. Bartleson, deceased, was without jurisdiction, and all its orders in relation thereto were absolutely void, cited: Pas. Dig., arts. 3895, 3896, et seq; Munson *v.* Newson, 9 Tex. 109; Hearn *v.* Camp, 18 Tex. 550, 551; Brockenborough *v.* Melton, 55 Tex. 503, 504; Murchison *v.* White, 54 Tex. 78; Mikeska *v.* Blum, 63 Tex. 44.

That the jurisdiction of the probate court, under the act of 1848, to appoint a guardian for a minor, did not depend upon the location of the property of the minor, but upon the minor's place of residence, they cited: Munson *v.* Newson, 9 Tex. 109; Acts of 1848, Pas. Dig., vol. 1, art. 3885, et seq; Freeman on Void Judicial Sales, p. 24, sec. 8, and preceding sections; Freeman on Judg., sec. 124; Brockenborough *v.* Melton, 55 Tex. 503.

That the probate court of Calhoun county had no authority to appoint a guardian of the estate, in Texas, of a minor resident in another state, they cited: R. S., art. 2515; also authorities before cited.

STAYTON, ASSOCIATE JUSTICE.—The ownership of the land in controversy must depend, primarily, upon the ownership of the land certificate upon which it was granted. If this was in the appellants,

their equitable ownership is superior to the naked legal title which rested in the appellees through the patent. If the county court for Calhoun county had jurisdiction to appoint a guardian of the estates of the three children of Peter K. Bartleson, and to order the sale of the land cetificate, after it was obtained, then the appellants showed that those under whom they claim were the owners of it prior to its location. Under the proof made in the case, it must be conceded that the parents of the appellees were entitled to a land certificate for a league and labor of land.

"This right, though neither real nor personal property *in esse*, was, nevertheless, an inchoate right to get that quantity of land out of some part of the public domain." Johnson *v.* Newman, 43 Tex. 639, and cases cited. To perfect this right, and to make it assume the character of personal or real property, tangible, it was necessary that the step required by law be taken, and a land certificate, the evidence of the right, be obtained. The right, imperfect as it was, was property which their ancestor might have sold, and it would seem that such a right, if vested in a minor, would be assets belonging to his estate and subject to administration through a guardianship.

Such a right would peculiarly need the attention of some one, that it might be perfected. That attention would necessarily have to be bestowed here ; for the laws in force here must be observed, otherwise the right could never assume the perfect shape of property, personal or real. The tribunals provided by the laws of this state, would alone have power to adjudicate the claim, and to furnish the complete evidence of the right, which, of itself, has often been held to be property subject to sale under administration. The right necessarily had its *situs* here, as fully as has land here. It had its existence only by force of the laws of this state, and could never be made effective save through their operation.

We, therefore, feel authorized to hold that the right which the appellees had, at the time John Henry Brown applied for letters of guardianship upon their estates, was property subject to administration through a guardian, and that over it the courts of this state alone had jurisdiction. The letters of guardianship were applied for and granted in the year 1851. At that time there was no law expressly providing for the appointment of guardians of the estates of nonresident minors having estates here, and it is contended that such an appointment was without authority, and, therefore, void. If this were true, it would be decisive of the main question in this case ; for, if the court had no power to appoint the guardian, it had no power to authorize him to sell, and no power to confirm the sale made by him.

The constitution of 1845 gave power to the legislature to establish tribunals "in each county for appointing guardians, granting letters testamentary and of administration; for settling the accounts of executors, administrators, and guardians, and for the transaction of business appertaining to estates." Const., art. 4, sec. 15. In pursuance of this, the legislature provided that the county courts "shall have power to take probate of wills, to appoint guardians, to grant letters testamentary and of administration; to settle the accounts of executors, administrators and guardians; to transact all business pertaining to the estates of deceased persons, minors, idiots, lunatics, and persons *non compos mentis*, and the settlement, partition and distribution of such estates, which powers shall be exercised in the manner prescribed by law." P. D., art. 1226.

This was the statute in force when guardianship of the estates of the appellees was granted. It is the statute which conferred jurisdiction on the county courts in matters affecting the estates of deceased persons and minors. It is very broad in its terms, and places no limitation on the power conferred, based on the non-residence of a deceased person or a minor. It contains language as applicable to the estates of deceased persons and minors who were non-residents of the state, but having estates here, as to the estates of persons here resident; and, in the absence of something in the statute indicating that it was not intended to confer such power, the courts are not authorized to place limitations upon it, which the legislature did not, in terms, impose, or the subject-matter, under the rules of law recognized by the tribunals of all civilized nations, did not require.

The act must, however, be read in the light of settled principles of law every where recognized; as, that it would not authorize an administration upon the estate of a deceased person, or guardianship of the estate of a minor, unless there was some estate of such person within the jurisdiction of the court, upon which the power could operate, or that it would not authorize the appointment of a guardian of the person of a minor who was neither domiciled nor resident within the state.

The act of March 20, 1848, recognizing that the former law gave the power to probate wills and to grant letters testamentary and of administration upon the estates of deceased persons who were non-residents, provided the manner in which this should be done, and, in this respect, in no way made any distinction between residents and non-residents, except as to the place where these things should be done. P. D. 1260.

The same act, recognizing the fact that the county courts, under the

law before referred to, had power to appoint guardians of the estates of non-resident minors, expressly provided for the appointment of a non-resident guardian here, if he had qualified in the state or territory of which he and his ward were resident; and it provides that the resident guardian shall turn over to him the estate of the ward. P. D. 3916.

There could be no resident guardian of such a non-resident minor's estate, if the county courts had no power to appoint one, and the exercise of the power to appoint here the qualified non-resident guardian of a non-resident minor's estate is the exercise simply of the power of the court to appoint guardians of the estates of such persons.

The guardianship of a non-resident minor's estate is necessarily ancillary in character, and as said in Green v. Rugely, 23 Tex. 548, of an administration of that character: "This power to grant ancillary administration is not limited within the scope of express statutory regulation. * * * Our statute, in granting probate powers to the county court, is general. It provides, 'that the said court shall have the power to take probate of wills, to appoint guardians, grant letters testamentary and of administration,' &c. * * * This is sufficiently broad to admit an administration to be granted in all cases where the general objects of our system of probate laws may require it, and to enable the court to grant administration, when necessary, in respect to any unadministered property that may be found in the state."

The laws in force at the time a guardian for the appellees was appointed did not expressly provide in what counties guardianship should be taken out in cases other than those in which the minors were residents of the state, but this does not affect the question of power to appoint guardians for the estates of non-residents. In the case before us, neither the residence of the wards in any particular county, nor the locality of the property of which the estate consisted, could determine the matter; for that in which the estate consisted had not locality in any particular county at the time guardianship was granted, though the property directed to be sold, no doubt, was within the county at the time the order to sell it was made, and it was within the state, and, thus, within the jurisiction of the court at the time guardianship was granted.

In considering a similar question in the case of Green v. Rugely, 23 Tex. 539, which involved the question of the jurisdiction of the probate courts of this state over the estate of a person who died resident of another state, and without property here at the time of his death, upon property of the estate being afterwards brought within this state, it was held:

1. That the power to grant ancillary administration is not limited within the scope of express statutory regulation.

2. That the statute granting probate powers to the county courts was general.

That the statute was sufficiently broad to admit an administration to be granted in all cases where the general objects of our system of probate laws may require it, and to enable the courts to grant administration, when necessary, in respect to any unadministered property that may be found in the state, even though the facts in the given case were such that, under the laws regulating the place at which administration should be had, no regulation existed by which the place for administration was fixed by an express statute.

4. That in order to give the courts powers commensurate with the general objects of the system, the grant of power was made general, and was not dependent upon the mere contingencies upon which a preference between counties was regulated, but upon the existence of property within this state, whose condition, in reference to the rights of parties in relation to it, called for the application of our probate laws for its preservation and distribution. It will be observed that the laws in force at the time that decision was made, attempted to fix with considerable accuracy the places at which, under different conditions of fact, wills should be probated, and letters testamentary and of administration granted (P. D., 1269); but the power of the courts was not restricted to such cases only as fell within these regulations.

We are of the opinion that an administration in a case which fell fairly within these regulations, not in the county pointed out by them, would not be null. In reference to the place at which guardians should be appointed, and as to the particular court which should have control of a minor's estate, the former law does not seem to have made any definite regulation intended to meet the exigencies which might arise. It would do violence to the spirit of the law to hold that the county courts had no power to appoint guardians, or to administer the estates of minors, except in cases in which all the details were regulated by express statute. It must be presumed that it was intended that the general power conferred should be exercised in accordance with the general rules applicable to such matters, and enforced in the courts of England and of the states of this union.

In England and America, however the rule may be elsewhere, it is held, that the courts of the country in which property of a minor may be, to whom is confided the general power to appoint guardians and to administer minor's estates, have the power to appoint guardians of

the estates of minors resident elsewhere and to control their estates. Logan v. Farlie, 1 Jacob 193; Stephens v. James, 1 Mylne & Keen 627; Hoyt v. Sprague, 103 U. S. 631; Rice's Case, 42 Mich. 530; Leonard v Putnam, 51 N. H. 249; Farrington, v. Wilson, 29 Wis. 400; Earl v. Dresser, 30 Ind. 12; Maxwell v. Campbell, 45 Ind. 360; *In re* Hubbard, 82 N.Y. 93. Stevens v. Gaylord, 11 Mass. 262; Nelson's heirs v. Lee, 10 B. Mun. 507; Story's Confl. of Laws, 404, 539, 550; Wharton's Confl. of Laws, 265; Schouler's Dom. Rel., 329.

The appellees having rights here which required protection, these rights having a value, and being property which could exist and be enforced or secured no where else, we cannot doubt that some county court in this state had power to appoint a guardian for their estates. In the absence of a statute restricting the exercise of this power, by requiring it to be exercised in some particular county, under the facts existing, we are of the opinion that the county court for Calhoun might lawfully exercise it. That the county court of any county in the state might have exercised it. If, as it seems we may, we may look to the laws regulating the places in which wills are required to be probated, and letters testamentary and of administration granted, for analogies which ought to be regarded in such matters, in the absence of a direct statute regulating the place at which guardianship of a non-resident ought to be granted, it would seem that Calhoun county was the proper county. Green v. Rugely, 23 Tex. 551; Goodwin v. Jones, 3 Mass. 522.

If we look to the analogies thus furnished, no one of the regulations except that which provides for the probate of wills and granting of letters testamentary or of administration in the county in which the nearest kin may reside would apply to the facts of this case. P. D., 1260. The petition for guardianship renders it probable that the only kindred the appellees had in this state resided in Calhoun county.

The county court for Calhoun county having jurisdiction, and being a court of general jurisdiction, its decrees, through which the land certificate was sold, cannot be called in question, unless this be done by some direct proceeding authorized by law for this purpose. Brown v. Christie, 27 Tex. 73; Guilford v. Levi, 49 Tex. 717; Murchison v. White, 54 Tex. 78; Fitz v. Fitz, 21 Tex. 511. These views are decisive of the rights of the parties, and other questions presented need not be considered. The judgment of the court below will be reversed, and judgment here rendered that the plaintiffs take nothing, and that the defendants recover the costs of this court and of the court below. It is so ordered.

REVERSED AND RENDERED.

[Opinion delivered February 12, 1886.]