## A. W. & E. P. CLEGG v. THE STATE.

1. TAXES—REPEAL OF FORMER LAW REGULATING TAXATION.  The repeal, June 3, 1873, of former tax laws did not relinquish the right of the State to recover taxes previously levied but not collected.

2. DE FACTO OFFICERS.  Although the Constitution, by its adoption, 3d December, 1869, became operative, yet the *de facto* ministerial and executive officers exercising authority and deriving color of authority from the preëxisting provisional government were not superseded until the organization of the State government; and the assessment of taxes made for 1870 by the assessor and collector appointed by the provisional government was legal.

3. TAXES.  Taxes are defined to be burdens and charges imposed by the legislative power of a State upon persons and property for public purposes.

4. LEGISLATIVE POWERS over taxation discussed.

5. TAXES LEVIED UPON LAND.  By the Constitution, taxes on landed property were intended to be a specific charge upon the land upon which assessed, to be enforced by proceedings in accordance with provisions made by the Legislature for their condemnation and sale for the taxes due thereon, and not by sale under a judgment *in personam*.

6. MATERIAL ALLEGATIONS IN PETITION IN SUIT FOR TAXES.  The petition showing that suit is brought in part to collect taxes on real estate without designating and describing the lands upon which such taxes are levied, and that suit is not brought for the condemnation and sale of the lands for taxes due thereon, but for a personal judgment against appellants for taxes due of every character, is insufficient, and a demurrer to it should have been sustained.

7. ASSESSMENTS.  No right of action exists for the non-payment of an *ad valorem* property tax until an assessment has been made as provided by law; and the Constitution providing for an assessment, the *pro rata* value of the property as levied cannot be ascertained otherwise, and it is error to admit *parol evidence* of the value of the property, the tax upon which is sued for.

8. DELINQUENT LIST—SUIT TO ENFORCE PAYMENT OF TAX.  The collector of taxes (sheriff), on failure of payment of taxes, should report the parties in default to the comptroller as delinquents; this report fixes the default and authorizes the comptroller to cause suit to be instituted.

9. DELINQUENT LIST.  The sheriff's duty being DIRECTORY, the facts to be established by it may be proved by other evidence; the duly certified delinquent list, with the comptroller's order for suit thereon would be *prima facie* evidence of the right of the State to judgment.

APPEAL from Galveston.   Tried below before the Hon. A. P. McCormick.

This suit was brought May 20, 1873, by the State against A. W. & E. P. Clegg, to recover of them the sum of sixty-six dollars and sixty-five cents, alleged to be due by them as *ad valorem* income and capitation tax for the year 1870, with eight per cent. interest thereon, from January 1, 1871 ; also the further sum of two hundred and seventy-five dollars and fifty cents *ad valorem* tax, for 1871, and sixty-eight dollars and eighty-eight cents, as school-tax, one-eighth of one per cent., for 1871, two dollars poll tax, with interest on amount of taxes compounded annually from January 1, 1872.

Also four hundred and eighty-two dollars and twelve cents, being seven-eighths of one per cent., school-tax for 1871, levied by the Board of School Directors of the School District of Galveston county, with interest thereon.

By amendment, 13th June, 1874, plaintiff alleged that defendants' property for the year 1870 was assessed at thirty thousand one hundred dollars, and that owned by them in 1871 was assessed at fifty-five thousand one hundred dollars for that year, claiming the several sums set out in the original as taxes upon said property, and particularly setting out the levy of the seven-eighths school-tax.   The defendants demurred generally, and urged several special causes of exception, which are discussed in the opinion, and answered by general denial, and facts attacking the school-tax.

The facts sufficiently appear in the opinion.

*L. E. Trezevant*, for appellants.

*Walter Gresham*, for State.

MOORE, J.   The want of time, and pressure of business will prevent any elaboration of our conclusions of the many questions of great public interest which have been discussed with marked ability and research by counsel in this and other cases of a kindred character.   We are, therefore, constrained to con-

tent ourselves with an announcement of our decision of such of these questions as, in our opinion, will suffice for the proper determination of the case, with but little effort to support our conclusions by argument or illustrations.

A fair construction of the law under which appellants claim this suit is brought, does not deprive the State of the right to demand and collect taxes levied and assessed under former laws, though repealed prior to its institution. (Pot. Dwar., 155, n. 5; Sedgw. on Con. St., 31, 113.) Evidently it was not the intention of the Legislature by the passage of the Act of June 3, 1873, regulating taxation, to relinquish the right to recover taxes previously levied, but not collected. To obviate all doubt, and guard against controversy, a supplemental act to this effect was passed on the same day. These two contemporaneous acts relating to the same subject-matter, must be taken and construed as one statute.

The objections to the assessment-roll for the taxes for the year 1870, made by the assessor and collector appointed by the provisional military government under which the laws were administered until superseded by the State government as organized under our present Constitution, were properly over-ruled. It may be admitted that, for certain purposes, the Constitution must be held to have gone into effect from its adoption by the vote of the people, on the 3d of December, 1869; but this in no way contravenes the proposition, which it is now much too late to question, that the *de facto* ministerial and executive officers exercising authority under and deriving color of authority from the pre-existing provisional government, were not superseded until the organization of the State government under the Constitution. Unquestionably it could not have been the intention of the framers of the Constitution to have left the State without officers, and the people in anarchy, for an indefinite length of time, till the new government could be organized, and those by whom its various functions were to be performed should be selected, and enter upon the discharge of their official duties.

There are, however, other objections to the judgment of a much more serious character. Some of which go, in part at least, to the very foundation of the action.

The suit is brought, as in the nature of an action of debt, to recover an amount claimed to be owing by appellants to the State for *ad valorem* income, capitation, and other taxes for the years 1870 and 1871.

"Taxes are defined to be burthens, or charges, imposed by "the legislative power of a State upon persons or property, to "raise money for public purposes." It is a power inherent in sovereignty, and without which constitutional government cannot exist. It is vested in the Legislature by the general grant of legislative power whether specifically enumerated in the Constitution among the powers to be exercised by it, or not. The constitutional provisions in reference to it, therefore, are more usually intended and understood as limitations and restrictions upon its exercise, than as the direct grant of the power to the Legislature. That a power so pervading in extent, which may be made to bear upon any species of property, and affect every occupation and industry of society, should be guarded by just and reasonable constitutional restrictions cannot be doubted. And that the Legislature, in its exercise of this power, cannot transcend these restrictions will be denied by no one. It is equally obvious, when taxes are levied, the citizen is liable for their payment at the time and in the manner required and provided by the law authorizing their assessment and collection.

An inspection of the Constitution of this State, shows that the power of taxation, in its all-pervading and unlimited force, has not been committed to legislative discretion, without guidance or restriction. The subjects of taxation, as is manifest by these restrictive provisions, are, primarily, property and persons, and may embrace incomes, occupations, and professions, not including, however, either agricultural or mechanical pursuits. Taxes levied by the State on these subjects, for general revenue, however, must be equal and uniform throughout the State. And all property in the State, except such as may be

exempt as provided in the Constitution, shall be taxed in proportion to its value, to be ascertained as directed by law. The annual assessment upon landed property shall be a lien on the property, and interest shall run thereon upon each year's assessment. Such property shall be sold for the taxes thereon, only under a decree of a court of competent jurisdiction. Provision for the condemnation and sale of all lands for the taxes due thereon was authorized to be made by the first Legislature, and every five years thereafter, of all lands, the taxes upon which shall not be paid to that date. (Constitution, Article 12, Sections 19–22.)

We think it quite evident, from these constitutional provisions, that taxes on landed property were intended to be a specific charge upon the land upon which they are assessed, and that such property cannot be sold for their payment, except by proceeding in accordance with provisions made by the Legislature for their condemnation and sale for the taxes due thereon. To enforce the payment of taxes due on land, by its sale under execution, on a judgment *in personam*, instead of by a proceeding *in rem*, subjecting it to condemnation and sale, would be, plainly, in violation of the object and purposes for which these constitutional provisions were evidently intended.

It appears upon the face of the petition, that this suit is brought, in part, to collect taxes on landed property, without designating and describing the lands upon which such taxes were levied. The allegations of the petition show that suit is not brought for the condemnation and sale of land for taxes due thereon, but for the recovery of a personal judgment against appellant for the entire amount claimed to be due the State for taxes of every character. The demurrer to the petition should therefore have been sustained.

There are other grounds upon which it is equally manifest the judgment must be reversed. It has been repeatedly decided, that no right of action exists for the non-payment of an *ad valorem* property-tax, until an assessment has been made as provided by law. (R. R. Co. *v.* Commonwealth, 1 Burch,

39

250; Showalter *v.* Brown, 35 Miss., 423; People *v.* Hastings, 29 Cal., 449; Middleton *v.* Bulin, 18 Conn., 189; Woodbridge *v.* Detroit, 8 Mich., 301.)

This proposition is a necessary conclusion, easily deducible from the essential nature of taxation (Cooley, 501), as well as from the constitutional provisions relating to taxes which we have just cited, and others which may be considered in connection with them, viz., Sections 28 and 40 of Article 12 (the last, as originally adopted).

" It is the very essence of taxation," says Judge Cooley, in his most admirable and able treatise on constitutional limitations (p. 495), " that it be levied with equality and uniformity, " and, to this end, that there should be some system of appor-" tionment. When the burthen is common, there should be " common contribution to discharge it. Taxation is the equiva-" lent for the protection which the government affords to the . " persons and property of its citizens; and as all are alike pro-" tected, so all alike should bear the burthen, in proportion to " the interests secured. When taxes are levied upon property " there must be an apportionment with reference to a uniform " standard, or they degenerate into mere arbitrary exactions." And though equality and uniformity of all property-taxes may be, and are generally very specifically provided for in our State Constitutions, little more is done thereby, as this profound jurist says, " than to state in concise language a prin-" ciple of constitutional law, which, whether declared or not, " would inhere in the power to tax."

The levy and assessment of a property-tax involves the exercise of separate and distinct powers and duties; the first is strictly legislative in its character, while the latter, to a great extent, at least in this State, is judicial. By its levy the Legislature requires a specific sum, deemed necessary for the demands of the government, to be apportioned *pro rata* by assessment upon all the property chargeable with it, or as is usual with us, and less complex, the levy is made by a charge of a definite per cent. upon the value of the property liable,

and then the amount to be paid by the citizen is ascertained by the assessment of the given per cent. on the property subject to it, by the officer, at the time, and in the manner provided for its assessment. If suit could be brought before assessment, or the *pro rata* value of the property as levied could be collected on other evidence of its value than that furnished by its assessment, as directed in the Constitution (Article 12, Section 28), there would be a manifest disregard of "the essential nature" of a property-tax, and a plain violation of the constitutional provision for its assessment. It must be held, therefore, that the court erred in admitting parol proof of the value of appellant's property during the years for which the taxes sued for are claimed.

Nor does the bare fact of the assessment of the tax authorize suit for its collection. This cannot be done until the taxpayer is in default by his failure to pay his taxes within the time prescribed by the law and regulating its collection. It is unnecessary to determine whether, if on default, other means than by suit for its collection being authorized by law, the State, nevertheless, may not, as any other suitor, resort to its courts for this purpose. This remedy is expressly provided in the statute as a means for their collection from delinquent tax-payers. Where the remedy by an action is expressly given, we think it must be held, however, that it can only be resorted to at the time, in the manner, and for the purposes authorized by the law under which it is brought. The duty and responsibility of collecting unpaid taxes does not primarily devolve upon the collector. If they are not voluntarily paid within the time allowed, it is his duty to report the parties in default to the Comptroller as delinquents. This report fixes the default and authorizes the Comptroller to have suit brought in the name of the State against such delinquents.

It is insisted by appellant, as a further ground for a reversal of the judgment, that this suit is not brought upon a "delin-"quent list" returned by the collector of taxes for Galveston county to the Comptroller. And because, in fact, no such "de-

"linquent list," as prescribed by law, had been made to the Comptroller. It has, however, been heretofore decided by this court, in the case of The Houston and Texas Railway Company *v.* The State (35 Texas, 148), that the requirements of the statute regulating the manner in which lists of delinquent taxpayers shall be made out, and reported to the Comptroller, are merely directory. We see no sufficient reason why we should dissent from this ruling of our predecessors or overrule their decision.

The essential facts upon which suit is founded are the levy and assessment of the tax, failure to pay it within the time given by law for doing this, and that suit is brought by authority of the officer charged with this duty. A duly certified delinquent list, with the order of the Comptroller for suit thereon, would afford *prima facie* evidence of the right of the State to judgment against the defendant for the tax assessed. The statutory provisions for the report of delinquency, and suit thereon, being, however, merely directory, the facts to be established by it may be proved by other appropriate and satisfactory evidence.

Other important and interesting questions are presented in the record, but as they are, or will be, discussed in cases in which their determination is of more immediate and direct importance, we will, at present, defer commenting upon them.

The judgment is reversed and the cause remanded.

. Reversed and remanded.