### RAYMOND *v.* THOMAS.

The special order, issued May 28, 1868, by the officer in command of the forces of the United States in South Carolina, wholly annulling a decree rendered by a court of chancery in that State in a case within its jurisdiction, was void. It was not warranted by the acts approved respectively March 2, 1867 (14 Stat. 428), and July 19 of the same year (15 id. 14), which define the powers and duties of military officers in command of the several States then lately in rebellion.

ERROR to the Supreme Court of the State of South Carolina.
*Mr. P. Phillips* for the plaintiff in error.
*Mr. W. W. Boyce* for the defendant in error.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The facts in this case, as disclosed in the record, are somewhat involved and complicated.   So far as it is necessary to consider them for the purposes of this opinion, they are not voluminous.

On the 25th of August, 1863, Mary Raymond bought from Thomas, the defendant in error, a small house and lot situated in Greenville, S.C., for which she gave him her note for $7,000, payable six months after the ratification of peace between the Confederates and the United States, or before, at her option, with annual interest from the first day of September, 1863. The premises were conveyed at the time of the sale, and the

grantee gave back a mortgage to secure the payment of the note.

On the 28th of May, 1866, Thomas filed his bill in the Court of Common Pleas of Greenville County to foreclose the mortgage. The vendee answered. The case was heard in July, 1866, before Chancellor Johnson. The chancellor held that the note was intended by the parties to be payable in Confederate money; and that, in view of all the circumstances, the amount of principal equitably due upon it was $2,500. The case was referred to a master to compute the aggregate principal and interest due upon this basis. This decree, upon the appeal of Thomas, was affirmed by the Court of Errors of the State at its December Term, 1867. On the 25th of January, 1868, Chancellor Carrol, sitting in the Common Pleas, decreed that the amount due in conformity to the master's report was $3,265.62; that, unless that sum was paid as directed, the commissioner should sell the premises; and that, if the proceeds were insufficient to pay the debt and costs, the complainant might issue execution for the balance.

On the 28th of May following, General Canby issued an order whereby he annulled this decree. The order contains a slight error in the description of the decree; but the meaning of the order is clear. The discrepancy is, therefore, immaterial. On the 24th of December, 1868, the military order *non obstante*, the commissioner reported that he had sold the premises for $1,005. On the 2d of January, 1869, Mary Raymond filed her bill in the Court of Common Pleas of Charleston County, setting forth the facts above stated; and further, that the sheriff of that county was about to proceed to collect from her the balance still due upon the decree, amounting to $2,653.26. She prayed that Thomas and all others be perpetually enjoined from further enforcing the decree. The court decreed accordingly. Subsequently Gaillard (the purchaser) and Thomas answered, and moved to dissolve the injunction. In July, 1869, this motion was overruled, and the injunction again ordered to be made perpetual. An appeal was taken to the Supreme Court of the State, but failed for want of prosecution.

In December, 1870, Thomas obtained leave to amend his original bill of foreclosure. He did so, setting forth, among

other things, that the original defendant, Mary Raymond, had died, and that Henry H. Raymond had been appointed her executor, and making him a party. In due time he answered, denying that he was either executor or administrator of the deceased, and insisting that he was not bound to answer, and that no decree could be taken against him. He admitted that he was in possession of her estate, and averred that he was ready to pay all her just debts. The amended bill and this answer set forth other things not necessary to be repeated.

The case in this new aspect came on to be heard. It was decreed that the sale of the mortgaged premises be confirmed, that the purchaser have a writ of assistance to enable him to obtain possession, and that the complainant have leave to enter up a judgment against the defendant for the balance due him, and interest and costs, as before decreed. Raymond thereupon removed the case by appeal to the Supreme Court of the State. That court, at the April Term, 1873, affirmed the decree of the lower court. This writ of error was thereupon sued out by Raymond; and the judgment of the Supreme Court is thus brought before us for review.

Outside of the record, our attention has been called to an act of the legislature of South Carolina of the 2d of September, 1868, touching certain military orders therein mentioned. The act does not embrace or affect the order of General Canby in question in this case.

Nothing more need be said in regard to the act.

The only point insisted upon here by the counsel for the plaintiff in error is the order of General Canby of the 2d of May, 1868, and its disregard by the Supreme Court of South Carolina in the judgment before us. The validity of the order is denied by the defendant in error. Our remarks will be confined to that subject.

The war between the United States and the insurgents terminated in South Carolina, according to the judgment of this court, on the 2d of April, 1866. *The Protector,* 12 Wall. 701. The National Constitution gives to Congress the power, among others, to declare war and suppress insurrection. The latter power is not limited to victories in the field and the dispersion of the insurgent forces. It carries with it inherently rightful

authority to guard against an immediate renewal of the conflict, and to remedy the evils growing out of its rise and progress. *Stewart* v. *Kahn*, 11 Wall. 506.

The close of the war was followed by the period of reconstruction, and the laws enacted by Congress with a view to that result.

These laws are the acts of March 2, 1867 (14 Stat. 428), the act of July 19, 1867 (15 id. 14), and the act of June 25, 1868 (id. 73). The two acts first mentioned defined the powers and duties of the military officers placed in command in the several States lately in rebellion. The act of June 25, 1868, provided, among other things, that, whenever the legislature of South Carolina should ratify the Fourteenth Amendment to the Constitution of the United States, she should be again admitted to representation in Congress; and that it should be the duty of the President, within ten days after receiving official information of the ratification, to issue a proclamation announcing the fact. Such a proclamation was issued on the 11th of July, 1868 (15 Stat. 704). This replaced the State in her normal relations to the Union. Nothing further was necessary, but the elections provided for (which speedily followed), to render her rehabilitation complete.

We have looked carefully through the acts of March 2, 1867, and July 19, 1867. They give very large governmental powers to the military commanders designated, within the States committed respectively to their jurisdiction; but we have found nothing to warrant the order here in question. It was not an order for mere delay. It did not prescribe that the proceeding should stop until credit and confidence were restored, and business should resume its wonted channels. It wholly annulled a decree in equity regularly made by a competent judicial officer in a plain case clearly within his jurisdiction, and where there was no pretence of any unfairness, of any purpose to wrong or oppress, or of any indirection whatsoever.

The meaning of the legislature constitutes the law. A thing may be within the letter of a statute, but not within its meaning; and within its meaning, though not within its letter. *Stewart* v. *Kahn*, *supra*.

The clearest language would be necessary to satisfy us that

Congress intended that the power given by these acts should be so exercised.

It was an arbitrary stretch of authority, needful to no good end that can be imagined. Whether Congress could have conferred the power to do such an act is a question we are not called upon to consider. It is an unbending rule of law, that the exercise of military power, where the rights of the citizen are concerned, shall never be pushed beyond what the exigency requires. *Mitchell* v. *Harmony*, 13 How. 115 ; *Warden* v. *Bailey*, 4 Taunt. 67 ; *Fabrigas* v. *Moysten*, 1 Cowp. 161 ; s. c., 1 Smith's L. C., pt. 2, p. 934. Viewing the subject before us from the stand-point indicated, we hold that the order was void.

This is the only Federal question presented for our consideration. As the Supreme Court of the State decided it correctly, our jurisdiction terminates at this point : we can look no farther into the case.                              *Judgment affirmed.*