STRICKLAND *et al. vs.* GRIFFIN *et al.*

[This case was brought forward from the last term, under §4271(a) of the Code.]

1. The constitution of 1868 took effect from the 21st day of July, 1868, not including that day. Therefore a judgment of the county court rendered on that day was valid, and was not affected by the provision of the constitution abolishing county courts.

(*a.*) But a *fi. fa.* issued on such a judgment by the judge of the county court, on July 25th, was invalid. The power to issue such a *fi. fa.* was transferred by the constitution of 1868 to the superior court.

(*b.*) In 49 *Ga.*, 284, the acceptance of an appeal bond was a mere

ministerial duty, in the line of the transmission of unfinished business to the superior court.

2. A sale under such a void process could pass no title to the purchaser, nor confer on him any right to have possession delivered to him by the sheriff; nor could the court by its order confer such power; especially against one claiming and holding adversely to the defendant in execution. The provision requiring the sheriff to put a purchaser in possession of land sold does not authorize him to turn out any other person than the defendant in execution, his heirs, or their tenants, or assignees since the judgment.

(*a.*) Even if the *fi. fas.* were good as between the parties thereto, one claiming to be a purchaser *bona fide* would not be bound by the judgment, but might attack it for any defect appearing on the face of the record or pleadings, or for fraud or collusion, whenever and wherever it interfered with his rights, either at law or in equity.

3. While equity will not ordinarily interfere by injunction to restrain a bare trespass or apprehended trespass, capable of computation in damages, unless in case of insolvency, or to prevent irreparable damage, yet where the bill involved also the enforcement of a trust and an attack upon a sale, on the ground of fraud which prevented the complainant from asserting her legal rights, there was no error in granting an injunction until the final hearing.

4. The evidence before the chancellor being conflicting, it does not appear that he abused his discretion in granting an injunction in this case.

5. Upon an application for injunction, notice should be given to the party sought to be enjoined, and no order for injunction should be granted until such party can be heard, unless it is manifest to the judge, from the sworn allegations in the bill or the affidavit of a competent person, that the injury apprehended will be done, if an immediate remedy is not afforded. In such case, he may grant *instanter* an order restraining the party complained of until the hearing or the further order of the court, which restraining order shall have the force of an injunction until rescinded or modified. Upon the hearing of the application, the chancellor may direct that the writ of injunction issue as prayed for, restraining the defendant from the acts named in the order, under a given penalty. For a chancellor in the first instance to grant "a temporary injunction," and upon the hearing to grant a "permanent injunction," was error.

February 27, 1883.

Constitutional Law. Courts. Judgments. Executions. Equity. Practice in Superior Court. Before Judge MERSHON. Clinch County. At Chambers. December 18, 1882.

Mrs. Griffin, on behalf of herself and her minor children, filed her bill. against Strickland and the sheriff of Clinch county, alleging, in brief, as follows: On February 19, 1882, one Staten conveyed to the husband of complainant certain land, in trust for complainant and her children. It was paid for from her own separate estate. On July 21, or 25, 1868, a judgment was rendered against her husband in the county court of Clinch county, and an execution was issued thereon from said court on July 25. This was void because the county court had already been abolished. It was, however, levied on the land as the property of her husband, and this was sold to Strickland. He agreed to a compromise of the *fi. fas.*, and in consequence, complainant's husband, then in life, but since dead, did not attend the sale under it or interpose a claim. The *fi. fa.* was charged to have been dormant when the sale was made. The prayer was for injunction to prevent the sheriff from putting Strickland in possession under an order of court which had been obtained for that purpose; that the *fi. fa.* be declared void; and that the sheriff's deed be canceled.

Strickland answered, in brief, as follows: The property was not paid for by claimant, but with property belonging to her husband; and the making of the deed to him as trustee was a fraudulent effort to defeat creditors. The execution under which he bought was issued July 25, 1868, but was founded on a verdict and judgment had on July 21. It had been declared valid by the superior court of Clinch county on a former hearing. A rule had been sued out to require the sheriff to put Strickland in possession. It had been resisted by Griffin, the defendant in execution, but had been granted. A compromise was then agreed upon, but complainant refused to comply with it, and thereupon another order to the sheriff to place Strickland in possession had been obtained.

The testimony introduced before the chancellor need not be set out here.

On the presentation of the bill, the chancellor passed the following order:

"Read and sanctioned. The defendants are hereby restrained and strictly enjoined from further proceedings to dispossess the complainants under said order, under a penalty of one thousand dollars; and it is further ordered that they and each of them show cause before me on the fourth Monday in October instant, at Blackshear, Pierce county, Georgia, why this injunction should not be made permanent. This October 7, 1881."

On the hearing, the chancellor passed the following order:

"After hearing argument on the within application for injunction, it is considered, ordered and adjudged by the court that the temporary injunction heretofore granted be, and the same is hereby, made permanent."

Defendants excepted.

A. T. McINTYRE ; HARRISON & PEEPLES, for plaintiffs in error.

No appearance for defendants.

HALL, Justice.

The *fi. fa.* in question was issued by the judge of the county court of Clinch county, and bore date the 25th of July, 1868. Upon its face it purported to issue upon a judgment of the county court rendered on the day it bears date. Some time afterward, this judgment was set aside by a judgment of the superior court of Clinch county, upon a motion regularly served, on the ground that it was rendered by a court which had ceased to exist, under the constitution of 1868. At the time this judgment of the superior court was rendered, access could not be had to the records and proceedings of the county court, as they had been lost or mislaid; subsequently these records were found, and it appearing from them that the judgment was rendered in the county court on the 21st, instead of 25th, of July, the order of the superior court setting it aside

was, upon a regular proceeding, revoked, and it was allowed to stand.

This bill, which is brought by a person who was no party to these proceedings or to the original judgment, makes the point distinctly, that the judgment and *fi. fa.* were both void, because the judgment was rendered by a court that had ceased to exist, and the *fi. fa.* was issued by one purporting to be an officer of this defunct tribunal.

1. In *Foster vs. Daniels*, 39 *Ga.*, 39, ' When a trial was had in the county court of Sumter county and a verdict for the plaintiff on the 20th day of July, 1868, and a judgment was entered thereon on the 22d of July, 1868, and a motion having been made in the superior court to set aside said verdict and judgment, on the ground that on the days they purport to have been rendered and entered the county court was abolished by the constitution of 1868, which motion was allowed by the court, setting aside both the verdict and the judgment,—this court held, that under the reconstruction acts of Congress, the state of Georgia had fully complied with the terms thereof, ratified the fourteenth amendment of the constitution of the United States, and assented to the fundamental condition imposed on her by the act of Congress, passed the 25th day of June, 1868 ; and, therefore, the constitution of the state of Georgia, amended by Congress, as provided in the 11th paragraph of the 11th article thereof, took effect, and was practically in operation from the 21st day of July, 1868 ; and also, that all unfinished business in the county court at the abolishment thereof by the constitution, was transferred to the superior court, by the 7th section of the 11th article of the state constitution, and that it was the duty of the superior court to have ordered a judgment to have been entered on the verdict rendered in the county court, on the 20th day of July, 1868, unless some good and sufficient cause was shown, other than the abolishment of the county court on the 21st day of July, 1868.' This decision, by its terms, would hold the judgment rendered

by the county court of Clinch on the 21st of July, valid, as the constitution abolishing the county court took effect and went into practical operation, not on, but from that day. But the court further holds, that the judgment rendered in that case on the 22d July, should have been treated as unfinished business, and rendered by the superior court, as directed by the constitution of 1868. The rendering of the judgment was clearly a judicial act, and could have been performed by the court alone, whether the judgment was entered and signed by the plaintiff's attorney or by the judge of the county court.

But was the issuing of this *fi. fa.* (admitting that it was done on the 25th day of July,) anything more than a ministerial act? In *Colquitt & Baggs vs. Oliver*, 49 *Ga.*, 284, this court decided that, where a verdict was rendered in the county court prior to its abolishment, and an appeal was entered afterwards, but within the four days allowed by law, the judgment rendered against the security on the appeal on the second trial was valid; that the acceptance of the appeal bond by the county judge was a ministerial and not a judicial act, and was nothing more than the transmission of the unfinished business of the county court to the superior court. The analogy between this case and the one under consideration is not close or complete. In that case the judge was engaged in the duty imposed by the constitution, which abolished his office, of transmitting the unfinished business of his court to the superior court; the act was essential to the performance of the duty enjoined upon him by the constitution, and was in furtherance of its objects. But the retention of such authority could not be implied to enable him to issue the execution. This could and should have been done by the superior court, after the case was transmitted. The objection is not that the judge of the county court was a *de facto* officer, and as such could perform a ministerial act; it was that he was no officer at all, either *de facto* or *de jure*, for the purpose in question; that no such office as that in which

he claimed to act, was in existence at the time the execution was issued; that *quoad hoc* he was invested with no more power or authority than a judge whose office had expired, or than one claiming to preside over a tribunal that never had an existence.

And this, we think, is the distinction clearly deducible from the authorities. The cases cited by counsel for the plaintiff in error certainly recognize it. *Hinton vs. Lindsay*, 20 *Ga.*, 746; *Blount vs. Wells*, 55 *Ib.*, 282; *Walden vs. County of Lee*, 60 *Ib.*, 298. So that we conclude from what appears in the proceedings that the judgment of the county court, which was rendered on the 21st day of July, 1868, was rendered while that court was in existence and was valid; but that the execution, issued four days thereafter by the judge of the county court, was issued after the court was abolished, by one who had no power to perform such an act, and is void, unless something other than this can be shown to take it out of the rule. If this had been an original question, not fully covered by former decisions of the court, then we might, perhaps, have entertained an argument as to how far it was affected by §3 of the Code, which declares that, "Public laws, which in themselves prescribe specifically that they are to take effect 'from and after their passage,' shall not be obligatory upon the inhabitants until published, and three days shall be allowed from the date of publication for every hundred miles distance from the capital, before a knowledge of the law shall be presumed against the inhabitants." As this law abolishing the county court was not directly operative upon the inhabitants of the state, but concerned only a public tribunal—its officers, it is not easy to perceive its application to the question under consideration, or how it conflicts with previous adjudications upon the question.

It was contended that, as between the parties to the *fi. fa.*, the question as to its validity was *res adjudicata*; that there was a judgment in Clinch superior court, sustaining and affirming it. A careful examination of the

record shows this to be a mistake. The motion, orginally, was to set aside the judgment; this motion was allowed, and an order taken setting it aside; at a subsequent term of the court, this order setting aside the judgment was rescinded. But the validity of the execution was never put in issue in these proceedings, and consequently was never passed upon by the court.

2. Inasmuch as this was a void process, land sold under it could pass no title to the purchaser, or confer upon him any right to have possession of it delivered to him by the sheriff ; nor could the court by its order confer such power, especially against one claiming and holding adversely to the defendant in execution, as the complainant in this case alleges she did. The provision requiring the sheriff to put purchasers into possession of the land sold does not authorize him to turn out any other person than the defendant in execution, his heirs, or their tenants, or assignees since the judgment. Code, §3651; 23 *Ga.*, 318. Even if this *fi.fa.* had been good, by virtue of any judgment entered upon a regular issue between the parties thereto, one claiming to be a purchaser *bona fide* would not be bound by the judgment, but might attack it for "any defect appearing on the face of the record, or pleadings, or for fraud, or collusion, whenever or wherever it interfered with his rights, either at law or in equity." Code, §3596.

3. It is contended further, that the injunction should not have been granted in this case, because the sheriff could not have been prevented thereby from putting the purchaser into possession, or the purchaser from taking possession, unless he was insolvent or irreparable damage would thereupon ensue to the claimant, and the fact of her becoming houseless and homeless would not be such irreparable mischief and damage. *Anthony vs. Brooks*, 5 *Ga.*, 576; *Bethune vs. Wilkins et al.*, 8 *Ga.*, 118; *Sullivan et al. vs. Hearndon*, 11 *Ga.*, 294. If this were a case of bare trespass, or apprehended trespass, capable of compensation in damages, we should follow the above author-

ities; but there is more in it than this. One of its purposes is to enforce a direct trust; another allegation is that this sale was effected in consequence of the defendant's breach of promise, and in violation of a compromise entered into to avoid the sale, whereby the complainant was misled and prevented from attending the sale and insisting upon her legal rights; that she was defrauded, and her property was sold at a sum greatly under its actual value. It is quite true that all these statements were denied by the defendant; that he also set up the fact that the property in question was purchased and paid for with the means of the defendant in execution, and that the trust deed relied upon was a device to protect it from this judgment. Complainant, on the other hand, claimed that the land was bought and paid for with her separate property, and the affidavits and other testimony before the chancellor were quite conflicting upon these various questions. Equity will interfere to set aside a judgment, where the court had jurisdiction, and where the party having a good defence was prevented from making it, by the fraudulent act of the adverse party, unmixed with fraud or negligence upon his part. Code, §§3129, 3595. That a court of equity has jurisdiction in cases of trusts, is a principle too familiar to require the citation of authorities in its support. In all cases of fraud, with few exceptions, it has concurrent jurisdiction with courts of law, as also in cases of mistake, accident and surprise.

4. We cannot say that there was such a preponderance of evidence in favor of the defendant in this bill, as to authorize us to hold that the chancellor abused his discretion in this case; and we will not control it, where there is evidence to sustain his ruling in these interlocutory proceedings. We know the difficulty in such cases of getting at the real facts of the case, and think it wiser and safer to withhold our views until they can be brought out on the final hearing, when the attendance of witnesses may be compelled and the full truth elicited, either by oral ex-

amination or testimony taken by commission, neither of which, as the law now stands, is attainable, upon a hearing, where an injunction is applied for.

5. The order directing the injunction in this case is unusual, and may lead to trouble in the future. . We have no doubt ourselves that his honor, the chancellor, meant only to grant, in the first instance, a temporary order restraining proceedings until the application for the injunction could be heard and passed upon; and when that was done, that he intended to order the usual injunction to last until the hearing, unless it should be sooner modified or dissolved, upon proper notice. He did not do this, however, but instead thereof, on October 7th, 1881, he ordered a temporary injunction, under a penalty of $1,000, and directed the parties to show cause before him, on a day named, why the injunction then granted should not be made permanent. On the hearing under this order, he passed the following, to-wit: " After hearing argument on the within application for injunction, it is considered, ordered, etc., that the temporary injunction heretofore granted, be made permanent."

The judge to whom an application for an injunction is made must, before granting an order for the same, cause notice of the application to be given to the party sought to be enjoined, and of the time and place when he will hear the motion, and no order for the injunction shall be granted until such party can be heard, unless it is manifest to the judge, from sworn allegations in the bill, or the affidavit of a competent person, that the injury apprehended will be done if an immediate remedy is not afforded, when he may grant, *instanter*, an order restraining the party complained of until the hearing or the further order of the court, which restraining order shall have all the force of an injunction, until rescinded or modified by the court. Code, §3211. .

Now, it is apparent from the words of this section of the Code, that the judge cannot issue an injunction at all. He

may, when the application is made, if it appear from the sworn allegations in the bill, or the affidavit of a competent person, that the injury apprehended will be done if an immediate remedy is not afforded,—then, *i.e.*, upon that condition and upon that alone, he may grant, *instanter*, a restraining order (not an injunction), against the party complained of, until the hearing, or the further order of the court, and this restraining order shall have the force of an injunction, until rescinded or modified. Upon the hearing, which must take place under existing rules of law, the injunction may be granted or refused, on the terms required by law. Code, §3212. The law recognizes no such thing as a "temporary" or "permanent" injunction. It does recognize a temporary restraining order, and consequent thereon, an injunction.

When an application is made for an injunction, if it is entertained favorably, the time and place for the hearing should be fixed, and the time and manner of serving the defendant prescribed; then, if a temporary restraining order is proper, the judge should recite that it appeared from the sworn allegations, or from the affidavit of the person making it, that the injury apprehended would be done unless the restraining order issued *instanter*, and he should grant it, stating wherein the party complained of was to be restrained, and that it should last until the hearing provided for in the order to show cause, or until the further order of the court; and upon the hearing, if he should determine to allow the injunction, he should recite the fact that the hearing was had in conformity with the previous orders in the case, and direct that the writ of injunction issue as prayed, or that it issue restraining the defendant from such acts as are named in the order, under the penalty of ———— dollars; and he should then direct such other proceedings as are usual, etc. As the statute was not pursued in this case, and as this issuing of a permanent injunction may be taken for a perpetual injunction, or something between it and the usual writ of injunction, we

have thought it best to reverse this decision for this reason alone, and to direct that the order granting an injunction be modified in accordance with this opinion, and when so modified, that it stand as of the date of the order granting what is inaptly and inappropriately termed a permanent injunction. In all other respects, and upon all other questions made by the bill of exceptions, the judgment of the court below is affirmed.  •

Judgment reversed.