### ANNIE E. DANIEL ET AL. v. J. C. HUTCHESON.

#### No. 103.

**1. Power of County Judge to Order and Approve a Sale of Land in April, 1870.**—A sale ordered by the probate judge in February, 1870, and made April 5, 1870, and confirmed thereafter, was void, because prior thereto the County Courts as courts of probate had been abolished by the Constitution of 1869, and probate jurisdiction vested in the District Courts.

**2. Effect of the Constitution of 1869 Upon the County Court.**—The Constitution of 1869 abolished the County Court, and its judiciary article distributed all of the judicial power of the State among the courts named therein, and left no room for the further existence of such courts as the County Courts had been; and after these provisions went into practical operation, no probate jurisdiction existed in any but the District Court.

**3. Constitutional Provision Construed.**—The last clause of section 7, article 5, of Constitution of 1869, after defining the jurisdiction of the District Court, concludes, "under such rules and regulations as may be prescribed by law," which is claimed to have the effect of suspending the article until such time as legislation should be had adopting rules and regulations for the guidance of the District Court in the exercise of probate jurisdiction. The majority of the court is of opinion that the provision of the Constitution defining the jurisdiction of the District Court should be treated simply as a readoption of similar provisions which had run through the previous Constitutions, with the addition of larger powers, which might be exercised in accordance with laws already in force governing other tribunals to which such powers had formerly belonged.

**4. Effect of the Military Government Existing in Texas.**—The fact that the person who made the orders of sale and confirmation in question, held his position with the sanction of the military government existing in Texas, did not prevent the Constitution from taking effect so as to abolish the County Court, until after those orders were passed. The principles of law which uphold the acts of de facto officers have no application, and we know of no respectable authority for holding that there may be a de facto judge of a court which has no legal existence. The reconstruction laws ceased to operate in Texas on March 30, 1870, and with them fell such powers as they had conferred upon the district commander.

APPEAL from Harris.   Tried below before Hon. JAMES MASTERSON.

*F. G. Morris* and *W. F. Robertson*, for appellants.—The Constitution of 1869 repealed all of the Constitution of 1866—that part of it providing for a County Court, as well as other parts—and all laws vesting jurisdiction in courts inconsistent with the provisions of the Constitution of 1869 as to jurisdiction of courts; and there being no provision in the Constitution of 1869 for continuing, for any length of time, the jurisdiction of courts exercising powers which they were not invested with under the new Constitution, such County Courts, as courts of probate jurisdiction, became extinct when the Constitution of 1869 took effect; and therefore the order of sale and confirmation of sale in question, which were made after said Constitution of 1869 took effect, were null and void, and are not in fact made by a court. Peak v. Swindle, 68 Texas, 242; Pelham v. Murray, 64 Texas, 477; Neal v. Bartleson, 65 Texas, 485; Rogers v. Kennard, 54 Texas, 30; Messner v. Giddings, 65 Texas, 301; Hildridth's Heirs v. McIntire, 1 J. J. Marsh., 206; Cheevers v. Duffel, 32 La. Ann., 653; Foster v. Daniels, 39 Ga., 39; Strickland v. Griffin, 70 Ga., 546; County of Calloway v. Foster, 93 U. S., 573; Anderson's Law Dic., 666; Baker v. Terrell, 12 Gray, 154; Railway v. Railway, 102 Mass., 386; Knox v. Garnett, 28 La. Ann., 168; Will of Bowen, 34 Cal., 682; Suth. on Stat. Con., secs. 464, 465; Commonwealth v. Hampden, 6 Pick., 501; 2 Sedg. on Con. of Stat. and Const. Law, 109, and Pome.'s note; Railway v. Varnell, 98 U. S., 479; Wells on Jur., secs. 69, 70; Butler v. Palmer, 1 Hill (N. Y.), 324; Fenelon's Petition, 7 Pa. St., 173; Canal Co. v. Chicago, 14 Ill., 334; Macnawhoc Plantation v. Thompson, 36 Me., 365.

*Hutcheson, Carrington & Sears*, for appellee.—1. The State of Texas was under martial law and a military commander during the periods at which all the transactions took place out of which this controversy grows. The orders of the military department, and the acts of its appointees, whether rightful or not, were the supreme authority in this State. There were no other governments; there were no other officers. Under this government a county judge had military power to dispense the laws, and did dispense them, and his acts, while so in power, are entitled to judicial recognition as a de facto judge of a de facto and de jure court. O'Brien on Courts Martial, p. 26; Bish. on Crim. Law, secs. 45, 52, 61–64; Ableman v. Booth, 21 How., 516, 517; Laws of 12th Leg., called sess., 1870, pp. 244, 245.

2. The acts of the de facto judge are valid and binding, and this is true even though the act under which they were appointed is afterwards declared unconstitutional and void. Black on Judg., sec. 175 et seq.; The State v. Carroll, 38 Conn., 449; Keene v. McDonough, 8 Pet., 308; Campbell v. The Commonwealth, 96 Pa. St., 344; Gregg v. Jamison, 55 Pa. St., 468.

3. A judgment or decree rendered or order made by a judge whose

term of office has expired, but who continues in possession and exercise of the functions of the office, is valid and binding as the act of a de facto officer.    Black on Judg., sec. 176 et seq.; Carli v. Rhener, 27 Minn., 292; The State v. Williams, 5 Wis., 308; Cary v. The State, 96 Ala., 78; Threaddill v. Railway, 7 N. C., 178; Woodside v. Wagg, 71 Me., 207; Cramer v. Boinest, 27 S. C., 436.

4.  My second proposition is, that both from the language employed in the Constitution, giving the District Court probate power, to-wit, "under such rules as the Legislature may prescribe," and from the necessity of submission to existing government of the military powers until they chose to remove or were withdrawn by the President, and from the further necessity of there being an interregnum, which can never be contemplated by the government, if existing laws were immediately suspended as to probate matters, it was never intended that the said act regarding probate jurisdiction in the District Court should take effect until the Legislature had provided some means by which the pending business should be transferred from the Probate Court to the District Court, and for conducting the disposition of it.

WILLIAMS, ASSOCIATE JUSTICE.—This cause was submitted upon the following agreed case:

" 1.  That R. W. Dowling owned the lot, number 28, described in plaintiff's petition, at the time of his death, which occurred on the —— day of ———, 1867, in Houston, Harris County, Texas.

" 2.  That the plaintiff Annie E. Daniel, is the surviving wife of said R. W. Dowling; and the plaintiffs Annie E. Robertson and R. S. Dowling are the sole issue of said R. W. Dowling; and that the plaintiffs owned the property described as lot number 28 in plaintiffs' petition, unless title thereto passed by the administration sale of said property herein after mentioned.

" 3.  That Annie E. Daniel was duly appointed administratrix of the estate of R. W. Dowling by the County Court of Harris County, on the 1st day of October, 1867, and duly qualified as such.

" 4.  That on an application by said Annie E. Daniel, as administratrix, in due form, an order of sale was made in the County Court on the —— day of February, 1870, ordering the sale of said lot number 28, described in plaintiffs' petition, to pay debts, and in accordance therewith a sale was made by said administratrix on the 5th day of April, 1870.   That the county judge appointed by General Reynolds, of the Army of the United States, in military command of the department including Texas, continued to act as county judge, and the order of sale and confirmation herein referred to were made in the County Court, as held by him in said Harris County at the date above stated.

" 5. If, at the time of said order of sale and confirmation thereof, the said County Court had jurisdiction generally of administration on estates of deceased persons, or power to make such orders, then the plaintiffs had no title; but if said court did not then have the general jurisdiction of administration of deceased persons, then plaintiffs have title to said lot number 28; and we submit to the court the legal question, Did the County Court have jurisdiction to make orders of sale and confirm sale at the time said orders were made in administration pending in said court. when the Constitution of 1869 took effect?''

There can be no doubt that the Constitution of 1869 abolished the County Court which had existed under the Constitution of 1866, and conferred all of the probate jurisdiction that previously belonged to it. upon the District Court. That instrument, by the provision defining the judiciary department, distributed all of the judicial power of the State. among the courts named therein, and left no room for the further existence of any such courts as the County Court had been.

It must result that no probate jurisdiction existed in any court after those provisions went into practical operation, other than that which was thereby vested in the District Court; and that the act of any person assuming the functions of a county judge, was not the act of a court and can have no effect.

It is contended by appellee, that those provisions which finally had the effect to abolish the County Court, did not so operate from the adoption of the Constitution; because, first, that instrument itself suspended them until legislation should be had adopting rules and regulations for the guidance of the District Court in the exercise of probate jurisdiction; and second, under the superior authority of Federal law, the State was subject to military government, exercising its powers through its own courts and officers, including the county judges, and the courts established and officers chosen by the people could not assume their functions until such government was voluntarily withdrawn.

We will consider these objections in the order in which we have stated them.

Is there in the Constitution itself any evidence of an intention that for any time after its adoption the County Court should continue to exist and act as a Probate Court?

That the Constitution, as the fundamental law of the State, took effect at once upon the vote of the people, has been held by our Supreme Court in the case of Peak v. Swindle, 68 Texas, 242, where it is said, that it. " became operative in all its parts at the time it was ratified by the people;" and again, " subject to the Constitution of the United States, laws. made in pursuance thereof, and treaties made under the authority of the General Government, the Constitution under consideration became the. supreme law of this State, regulating, so far as it assumed to do, the.

rights of persons and of property from the date of its adoption by vote of the people.'' The question involved in that case was, whether the provision contained in that Constitution suspending the statute of limitations operated from the date of its adoption by the people, or from the time when the Senators and Congressmen elected under it were admitted into Congress, on March 30, 1870; but that question depended and was decided upon the more general one as to the time at which the Constitution, as a body of law, began to operate. No other time than that at which the people expressed their will by the adoption of the Constitution being fixed in the instrument itself, it was held that it became the fundamental law of the State from that time. See, also, Foster v. Daniels, 39 Ga., 39; Strickland v. Griffin, 70 Ga., 546; Cheevers v. Duffel, 32 La. Ann., 653.

It is unquestionably true, however, that by the provisions of the Constitution itself, the effective operation of particular provisions might be postponed or suspended until other things should be done or other events should happen. The same power which declared the law could determine when it should have practical effect. And if there is anything in the Constitution itself which shows an intention that the County Court should continue to exist and to exercise probate jurisdiction until legislation should be adopted for the transfer to and assumption by the District Court of such jurisdiction, respect must be given to such intent.

Appellee relies on the latter part of the last clause of section 7 of article 5, which is in these words:

"And the District Court shall also have original and exclusive jurisdiction for the probate of wills; for the appointing of guardians; for the granting of letters testamentary and of administration; for settling the accounts of executors, administrators, and guardians; for the transaction of all business appertaining to the estates of deceased persons, minors, idiots, lunatics, and persons of unsound mind; and for the settlement, partition, and distribution of such estates, under such rules and regulations as may be prescribed by law.''

Appellee's contention is, that the intention is here manifested, that the District Court should not commence the exercise of the probate jurisdiction newly conferred upon it until laws should be passed putting it in operation and prescribing procedure to enable it to do so; and that as a consequence it was necessarily contemplated, that until such legislation was enacted, the County Courts, in which such proceedings were pending when the Constitution was adopted, should continue in the exercise of the jurisdiction which was conferred upon them by previous laws.

Whether the District Court, as it existed before the adoption of this Constitution, continued thereafter as the same court, with additional powers and enabled to proceed in the exercise of such new jurisdiction, without legislative aid, by employing and adapting to its needs the old procedure; or whether a new court, called the District Court, was created,

which could not organize until officers were provided and laws passed giving effect to the Constitution, is one of the questions which is thus raised. For if the District Court took jurisdiction over estates as soon as the Constitution was adopted, such jurisdiction was, by the terms of that instrument, made exclusive, and could not exist in any other tribunal.

The State, at that time, was divided into judicial districts, in each of which was a district judge, and in every county of which was a District Court. The Constitution provided for the election of district clerks at the same election at which it was submitted to the people, who should enter upon the discharge of their duties, including those previously performed by county clerks, as soon as they were elected. Const., art. 5, sec. 9; Election Declaration, sec. 3; 2 Pasch. Dig., p. 1134.

The district judges and district clerks who were in office at the time were holding under the provisional government, and the offices which they held not having been abolished, that they could continue to hold until successors were chosen and had qualified, has been held in several cases, in which we think the conclusions reached are sound, though we do not approve of much that is said in them nor of all the reasons upon which the conclusions are based. Grant v. Chambers, 34 Texas, 574; Griffin v. Cunningham, 20 Gratt., 31; Leachman v. Musgrave, 45 Miss., 511.

In the Constitution under consideration, there was no provision for the further continuance of the offices of county judge and county clerk, and no election was ordered for any such officers.

Since the foundation of government in Texas, we have had a District Court of substantially the same nature and structure, under each of the several constitutions, with well defined rules and methods of practice and procedure. There had also long existed a system of probate jurisprudence, which furnished rules of practice and of decision in probate proceedings, and which could readily have been adapted to the use of the District Court in the exercise of its new powers. The laws which regulated the practice of that court, in civil and criminal matters, were not better understood than those which had grown up for the guidance of the County Court in probate matters. By the abolition of the County Court, was all that body of law repealed or rendered inoperative? If not, where was there any necessity for further legislation to enable the District Court, to assume the jurisdiction which was simply transferred to it from the defunct County Court?

Evidently, the Constitution simply took the place of that which was in force before its adoption, underneath our general system of jurisprudence, as the fundamental law upon which it should rest, repealing only such rules as were in conflict with it and leaving all the rest in force.

There was nothing in the nature of the powers conferred on the District Court which required further legislation before they could be put

into use, and no reason, arising from the provisions of the Constitution itself, is perceived why those courts could not at once have assumed probate jurisdiction.

The language used in the clause above quoted, " under such rules and regulations as may be prescribed by law," would include rules and regulations already existing, as well as such as might be thereafter prescribed.

"A constitution is to be held as prepared and adopted in reference to existing statutory laws upon the provisions of which, in detail, it must depend to be set in practical operation." The People v. Potter, 47 N. Y., 380; Cass v. Dillon, 2 Ohio St., 609; The People v. Draper, 15 N. Y., 537.

Had there never been any legislation on the subject, would it be contended that no power to proceed with the administration of justice as intended by the people would ever have vested in the District Court? Such would seem to be the inevitable conclusion from the position assumed; and it would seem to follow, that the great body of our laws, which depended upon the action of that court for enforcement, would have remained inactive and unenforced.

A majority of the court is, therefore, of the opinion that the provisions of the Constitution defining the jurisdiction of the District Court should be treated simply as a readoption of similar provisions which had run through previous constitutions, with the addition of larger powers, which might be exercised in accordance with laws already in force governing other tribunals to which such powers had formerly belonged. See Neal v. Bartleson, 65 Texas, 485; Pelham v. Murray, 64 Texas, 477; Trigg v. The State, 49 Texas, 643; McMullen v. Guest, 6 Texas, 275.

But if it be admitted that such is not the correct rule as to the District Courts, it by no means follows that the County Court was continued in existence.

The framers of the Constitution, had they seen fit, might have so shaped its provisions as to make the investiture of the District Court with the powers of a court of probate depend upon legislative action, and might have retained the County Court until such action was had. But the expression of an intention that the powers of the District Court should be exercised under such regulations as might be prescribed by law, admitting that reference was had to future legislation alone, was not equivalent to saying that the County Court should remain until such regulations were adopted.

As we have before pointed out, the whole judicial power was partitioned among the several tribunals named, and such inferior ones as the Legislature might establish. This was, in effect, a declaration that none others should exist. It might be true, that legislative action was essential to put in motion the powers conferred on tribunals provided for, but there is no reason why it should be required to disestablish those

which the Constitution undertook to abolish. This was a declaration of the popular will, which required no aid, but which took effect at once, and spoke from the time of its adoption. Nowhere in that Constitution is there a provision which contemplates the further continuance of the County Court.

If it be contended that this construction leads to a condition in which there was in existence no tribunal which could exercise probate jurisdiction in the interval between the adoption of the Constitution and the passage of laws providing for the transfer to the District Courts of business pending in the County Courts, the answer is, that it was entirely competent for the people in framing a Constitution to so provide. Where their will is unequivocally expressed there is no course open to the courts but to recognize and obey it. Benner v. Porter, 9 How., 244–245.

The intention to leave the State for a time without a tribunal to exercise probate jurisdiction should not, however, be imputed to the framers of the Constitution, if such construction can be avoided consistently with its provisions; and this strengthens the view that the District Courts at once took such power.

It remains to determine the question, whether or not the existence of military government in Texas, and the fact that the person who made the orders of sale and confirmation in question held his position with its sanction, prevented the Constitution from taking effect so as to abolish the County Court until after those orders were passed.

The principles of law which, on grounds of public convenience, uphold the acts of de facto officers, can have no application here. Offices are created by force of law, and none can exist except by sanction of law. Where there is no lawful office there can be no officer, either de jure or de facto. Norton v. Shelby County, 118 U. S., 425; Hildreth's Heirs v. McIntyre's Devisees, 1 J. J. Marsh., 206; Strickland v. Griffin, 70 Ga., 546; Cheevers v. Duffel, 32 La. Ann., 653.

In the case of Clegg v. The State, 42 Texas, 605, the Supreme Court held, that it was "much too late to question the proposition that the de facto ministerial and executive officers, exercising authority under and deriving color of authority from the pre-existing provisional governments, were not superseded until the organization of the State Government under the Constitution."

That decision does not reach the point before us. It dealt only with the acts of ministerial and executive officers holding under the provisional government. It may be supported upon reasons which have no application to the question which we are considering.

We know of no reliable authority for holding that there may be a de facto judge of a court which has no legal existence. The cases before referred to, holding that provisional judges continued in office until succeeded by those chosen under the reorganized governments, all had refer-

ence to courts which were continued by the new Constitution, as was our District Court.

We have seen that the Constitution undertook to exclude the County Court from our judicial system. Was there any other law by which it could be kept in existence contrary to the expressed will of the people?

The series of acts passed by Congress, known as the reconstruction laws, did not undertake to establish any courts in this State. They did undertake to confer large powers upon the commanders of military districts. The nature and extent of those powers, it is unnecessary and would be unprofitable for us to try to determine; for they did not continue long enough, by the terms of the laws from which they were derived, to add anything to the title asserted by appellee.

By the fifth section of the Act of March 2, 1867, it was provided, that when the State should comply with certain conditions therein specified, the provisions from which the military commander received his powers should become inoperative in the State.

Acts of Congress were subsequently adopted prescribing a course of procedure through which a new Constitution, intended to accede to the demands thus made upon the State, might be established.

If the consent of the National Government was required to empower the people of the State to ordain for themselves a fundamental law, it was thus given, and the proceedings through which that under consideration was framed and ratified, were in pursuance of a course marked out by Federal legislation.

The military commander had no governmental powers except such as he received through the reconstruction laws, and they could not continue longer than those laws authorized.

Before the order of sale on which appellee's title rests was made, the State, by the Constitution and the acts of the Legislature which assembled under it, had done everything required by Congress, and was entitled to have her Senators and Representatives admitted into the National Congress, as was recognized by that body by its Act of March 30, 1870.

The provisions of the Constitution thus adopted were all valid unless in conflict with the Constitution of the United States and the laws passed in accordance therewith. Their validity did not depend upon the will of the military officer in command of the State. The reconstruction laws ceased to operate in this State at the latest on the 30th day of March, 1870, and with them fell such powers as they had conferred upon the district commander. The contention, that he could thereafter hold in office a county judge whose office had been abolished, would elevate his power not only above that of the people of the State, but above that of the National Congress.

It surely needs no argument to meet such a proposition. Reymand v. Thomas, 91 U. S., 712.

The sale and order of confirmation upon which appellee rests his title were made after March 30, 1870, and appellee's position, that the county judge had power, received from the military authorities, to continue to act as such, can not be maintained. We would not be understood to intimate that any such power existed at any time after the Constitution was adopted by vote of the people, either before or after its approval by Congress.

It is strongly urged, that if the acts of persons who assumed to be judges of County Courts after the adoption of the Constitution are held void, the result will be to nullify the titles to extensive properties sold under proceedings like this. To what extent this is true we have no means of knowing.

The fact could not affect our decision. We can not pronounce that to have been the act of a court which was the unauthorized act of one having no lawful authority, but assuming to exercise the functions of a court, which did not exist. Such a principle would be much more disastrous to society than any consequences that can flow from an adherence to correct doctrine.

The orders of sale and of confirmation relied on, in the opinion of a majority of the court, had no validity, and the sale passed no title.

The judgment will therefore be reversed and here rendered for appellant.

*Reversed and rendered.*

Delivered April 13, 1893.

PLEASANTS, ASSOCIATE JUSTICE, dissenting.—When the decision in this cause was rendered, on the 13th instant, I dissented from the conclusion of a majority of the court, upon material and controlling questions of law, and I now enter of record my grounds of dissent. In construing any section of a constitution, it is unquestionably the duty of the court to look to the object and purpose of the different sections of the instrument which relate to the matter under consideration; and if by looking to all the sections bearing upon the matter for decision, the leading object and purpose of the convention can be ascertained, it should be followed; even if the interpretation thus given to the instrument be in conflict with the literal and strict compliance of some of its provisions. The intention of the law maker constitutes the law, and that intention may not be expressed by the letter of the law. That which is clearly implied in a written instrument is as effectual as what is expressed.

But my construction of the judicial article of the Constitution of 1869 does not make that article conflict with any other provision of that instrument. Section 1 of article 5 vests the judicial power in the Supreme Court, in District Courts, and in such inferior courts and magistrates as may be created by the Constitution, or by the Legislature under its authority. Section 6 of this article provides, that the State shall be divided

into convenient judicial districts, and that the Governor, by and with consent of the Senate, shall appoint one judge for each district, who shall hold his office for eight years, and shall hold a court three times a year, in each county of his district, at such time and place as may be prescribed by law; and section 7 is in these words: "The District Court shall have original jurisdiction of all criminal cases; of all causes in behalf of the State to recover penalties, forfeitures, and escheats; and of all suits and cases in which the State may be interested; of all cases of divorce; of all suits to recover damages for slander or defamation of character; of all suits for the trial of title to land; of all suits for the enforcement of liens; and of all suits, complaints, and pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $100, exclusive of interest; and the said courts, and the judges thereof, shall have power to issue the writ of habeas corpus, and all other writs necessary to enforce their own jurisdiction, and to give them a general superintendence and control over inferior tribunals. The District Court shall also have appellate jurisdiction in cases originating in inferior courts, with such exceptions and under such regulations as the Legislature may prescribe. And the District Court shall also have original and exclusive jurisdiction for the probate of wills; for the appointing of guardians; for the granting of letters testamentary and of administration; for settling the accounts of executors, administrators, and guardians; and for the transaction of all business appertaining to the estates of deceased persons, minors, idiots, lunatics, and persons of unsound mind; and for the settlement, partition, and distribution of such estates, under such rules and regulations as may be prescribed by law."

It is evident from these several provisions of the Constitution of 1869, that the judicial article of that instrument was not self-operative, and could not take effect until the Legislature should divide the State into judicial districts, and should prescribe the times and places for holding the courts.

It is also evident, that the Constitution of 1869, when it invests the District Court with probate jurisdiction, means the court created by that instrument, and has no reference to the District Court created by the Constitution of 1866. I therefore conclude, that the intention of the convention was that both the District and County Courts created by the Constitution of 1866 should continue in the discharge of their functions, until the District Courts created by the Constitution of 1869 were organized and put into operation by legislative and executive action, as provided in section 6. I can not believe that it was the intention of the convention which framed the Constitution of 1869, that immediately upon the ratification of that instrument by the people, the judicial powers of the State should be suspended until the courts created by that Constitution should be organized. Clegg v. The State, 42 Texas, 607. The Consti-

tution itself did not so declare, and it is only by implication that such conclusion can be reached. Construing the first, sixth, and seventh sections of article 5 together, it is clear to my mind that it was not the intention of the convention to confer probate jurisdiction upon the District Court created by the Constitution of 1866; but a new tribunal of justice, possessing all the powers of both the District and County Courts then existing, was provided for, and when organized was to supersede both the District and County Courts created by the Constitution of 1866.

If I am correct in this view, then if the decision of the court in this case be the law, the judicial department of this State was suspended in its functions from the 3rd day of December, 1869, until the organization of the District Courts by the act of the Legislature in the summer of 1870. As a matter of history, we know that the District and the County Courts continued in the exercise of their jurisdictions long after the adoption of the Constitution in December, 1869; and if the law be as held by a majority of this court, then all that was done by the judiciary of this State between the time of the election held in November and December of 1869, and the day on which the act of the Legislature organizing the District Courts, which I believe was on the 10th of August, 1870, must be held to be null and void; and the titles to property honestly bought and paid for, under judgment and decrees of the County Courts, and now aggregating in value perhaps millions, are worthless.

It is certainly more conservative, and I think more in consonance with the rules for construing both statutory and constitutional law, to hold that the County Courts were authorized by the law to continue their functions until superseded by the District Courts which were organized by the Act of the Legislature of 1870, passed in obedience to the sixth section of the fifth article of the Constitution of 1869. I can see nothing in this view of the subject in conflict with the decision in the case of Peak v. Swindle. I have no doubt of the correctness in that decision. When the Constitution was adopted by the people of the State, that instrument immediately took effect, and was operative in all of its parts as far as practicable; and it was suspended in none of its provisions to await the action of Congress in admitting the State into the Union. But it is too plain to admit of argument, that the judicial article of the Constitution was not self-operative. The substitution of one framework of government in all its parts, by another, is not the work of a single day.

For the reasons indicated in this opinion, my conclusion is, that the order of the County Court of Harris County, made in February, 1870, directing the sale of the property involved in this suit by the administratrix of the estate of R. W. Dowling, deceased, and the subsequent ratification by said court of the sale so ordered, passed the title of said property to the purchaser, and that the judgment of the District Court of

Harris County rendered for the appellee should be affirmed, and that the decision of this court, reversing that judgment and rendering judgment for appellant, is erroneous.

Delivered April 30, 1893.

Upon hearing by the Supreme Court on certificate of dissent, the opinion of the majority of the court was reversed, and the judgment of the District Court affirmed.   Decision October 28, 1893.